## INCRES STEAMSHIP CO., LTD., *v.* INTERNATIONAL MARITIME WORKERS UNION
ET AL.

No. 33. Argued December 12, 1962.—Decided February 18, 1963.

*Breck P. McAllister* argued the cause for petitioner. With him on the briefs were *George S. Leisure* and *Peter W. Mitchell.*

*H. Howard Ostrin* argued the cause for respondents. With him on the brief was *Herman E. Cooper.*

Briefs of *amici curiae,* urging reversal, were filed by *Solicitor General Cox, Acting Assistant Attorney General Guilfoyle, Daniel M. Friedman* and *Morton Hollander* for the United States, by *Lawrence Hunt* for the Government of the United Kingdom of Great Britain and Northern Ireland, by *Herbert Brownell* and *Jack P. Jef-*

*feries* for the Republic of Panama, and by *Burton H. White* for the Republic of Liberia.

A brief urging affirmance was filed by *Neal Rutledge* for the Seafarers' International Union of North America, as *amicus curiae.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The basic issue in this case, the application of the National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 541, 29 U. S. C. §§ 151 *et seq.,* is decided this day in *McCulloch* v. *Sociedad Nacional, ante,* p. 10. In view of factual differences and procedural dissimilarity from that case, however, we find it appropriate to write briefly.

The petitioner, Incres Steamship Company, Ltd., is a Liberian corporation which is wholly owned by Italian nationals. It operates two Liberian-registered passenger ships, the *Nassau* and the *Victoria,* which make regularly scheduled cruises between New York City and various Caribbean ports for seven months each year. In addition, annual cruises are made to Italy, where the vessels undergo repairs and the crews take their leaves. The crews of both vessels are nonresident aliens, most of whom are Italians, and they are recruited and hired in Italy, where they sign Liberian articles.

Incres maintains its principal office in London, and it has no place of business in Liberia. It shares an office in New York City with Incres Line Agency, Inc., a New York corporation which is controlled by Incres and acts as agent for its cruise business. The president of Incres, an Italian national, who is a part-time New York resident, is also an unpaid officer and director of Incres Line Agency. He conducts business of Incres from the Incres Line Agency office when he is in New York.

The respondent, International Maritime Workers Union, is an American labor organization formed by two other American unions for the primary purpose of organiz-

ing foreign seamen on foreign-flag ships. In February of 1960 it began a campaign to organize the seamen on Incres' vessels. On May 13, 1960, as part of this campaign, IMWU began picketing at the pier where the *Nassau* was docked. Two days later the *Victoria,* while anchored offshore, was picketed by IMWU representatives in a launch. The IMWU representatives persuaded some crew members of the *Nassau* not to perform their duties, and longshoremen and tugboat crews were temporarily persuaded to refrain from servicing both vessels. As a result of this activity, several cruises were canceled.

On May 16, 1960, Incres brought this action for damages and injunctive relief against IMWU. On the same day IMWU filed unfair labor practice charges against Incres, on which the National Labor Relations Board has conducted an investigation but has not rendered a decision. The Supreme Court of New York County granted a temporary and, after trial, a permanent injunction enjoining the union from picketing Incres' vessels or from encouraging crew members to refrain from working on those vessels. The Appellate Division affirmed. 11 App. Div. 2d 177, 202 N. Y. S. 2d 692. The New York Court of Appeals, by a divided court, reversed. 10 N. Y. 2d 218, 176 N. E. 2d 719. Applying our decision in *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959), it held that the state courts had no jurisdiction until the Board refused to act in the dispute, since it was "surely arguable" that the Board would exercise jurisdiction under the contacts theory as applied in *West India Fruit & Steamship Co.,* 130 N. L. R. B. 343 (1961), and other Board decisions. We granted certiorari, 368 U. S. 924, and the case was argued with *McCulloch* v. *Sociedad Nacional, supra,* and its companion cases.

We held today in *Sociedad Nacional* that the Act does not apply to foreign-registered ships employing alien sea-

men.   The holding and reasoning in that case are equally applicable to the maritime operations here, leading to the conclusion that the Act does not apply.   It is true that our decision in *Garmon, supra,* as applied in *Marine Engineers Beneficial Assn.* v. *Interlake S. S. Co.,* 370 U. S. 173 (1962), results in pre-emption of state court jurisdiction if a dispute is arguably within the jurisdiction of the Board.   But, although it was arguable that the Board's jurisdiction extended to this dispute at the time of the New York Court of Appeals' decision, our decision in *Sociedad Nacional* clearly negates such jurisdiction now. In that case we were immediately concerned with the Board's jurisdiction to direct an election, holding that the Act had no application to the operations of foreign-flag ships employing alien crews.   Therefore, no different result as to Board jurisdiction follows from the fact that our immediate concern here is the picketing of a foreign-flag ship by an American union.   See *Benz* v. *Compania Naviera Hidalgo,* 353 U. S. 138 (1957).   The Board's jurisdiction to prevent unfair labor practices, like its jurisdiction to direct elections, is based upon circumstances "affecting commerce," and we have concluded that maritime operations of foreign-flag ships employing alien seamen are not in "commerce" within the meaning of § 2 (6), 29 U. S. C. § 152 (6).

· No different result is suggested by our decision in *Teamsters Union* v. *New York, N. H. & H. R. Co.,* 350 U. S. 155 (1956).   There we held that a railroad, subject to the Railway Labor Act and thus exempt from the definition of "employer" in the National Labor Relations Act, was not thereby precluded from "seeking the aid of the Board in circumstances unrelated to its employer-employee relations."   *Id.,* at 159.   Therefore, in a situation where a union "was in no way concerned with [the railroad's] labor policy," *id.,* at 160, but sought to prevent motor carrier employees from delivering truck-trailers to the

railroad for "piggy-back" carriage, we held that state court jurisdiction was pre-empted by the Act. Here, of course, the IMWU's activities are directly related to Incres' employer-employee relationships, since the very purpose of those activities was the organization of alien seamen on Incres' vessels.

For the reasons stated, the judgment of the Court of Appeals is vacated and the cause is remanded for further proceedings consistent with this opinion and that in *Sociedad Nacional.*

*It is so ordered.*

MR. JUSTICE GOLDBERG took no part in the consideration or decision of this case.

[For concurring opinion of MR. JUSTICE DOUGLAS, see *ante,* p. 22.]