NAVIOS CORPORATION
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

UNIVERSE TANKSHIPS, INC.
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

CURTIS BAY TOWING COMPANY OF
PENNSYLVANIA.
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

P. F. MARTIN, INC.
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

The PENNSYLVANIA RAILROAD
COMPANY
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

The PENNSYLVANIA TIDEWATER
DOCK COMPANY
v.
NATIONAL MARITIME UNION OF
AMERICA et al.

Civ. A. Nos. 29757–29762.

United States District Court
E. D. Pennsylvania.

Dec. 16, 1964.

See also, D.C., 206 F.Supp. 741, 764, 797.

Robert M. Landis, Dechert, Price & Rhoads, Philadelphia, Pa., for Pennsylvania R. Co. and Pennsylvania Tidewater Dock Co.

Earle K. Shawe, Sidney J. Barban, Baltimore, Md., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Navios Corp., Universe Tankships, Inc., Curtis Bay Towing Co. and P. F. Martin, Inc.

Charles Sovel, Freedman, Borowsky & Lorry, Richard H. Markowitz, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendants.

WOOD, District Judge.

The defendant Unions, and their individual personal representatives, have filed· motions for summary judgment in these consolidated actions. These motions controvert our statutory jurisdiction under Sections 301 and 303 of the Labor Management Relations Act, 29 U. S.C.A. §§ 185 and 187. Also under attack is our federal jurisdiction of certain common law actions, and various claims for punitive damages and counsel fees.

*In limine* we are confronted with a threshold procedural problem which may seem technical, but nevertheless must be resolved. A motion for summary judgment is improper when matters in abatement such as lack of jurisdiction are advanced. It is not a substitute for a motion to dismiss, because if the court lacks jurisdiction it cannot render a judgment, but must enter an order dismissing the action *without prejudice*. Thompson v. United States, 291 F.2d 67, 68 (10 Cir. 1961). "But since the label attached to a motion is unimportant, a motion for summary judgment for lack of jurisdiction over the subject matter may be treated and disposed of as a motion to dismiss." 6 Moore's Fed.Prac. par. 56.03, p. 2027 (2 ed. 1953).

Although lack of jurisdiction is the primary ground asserted in the motions, we have also considered, as a basis for our decision, whether or not certain of these actions state a claim upon which relief can be granted. On this latter theory several of our rulings operate on the merits.

With the intention of making an orderly disposition of these motions, we will make a summary statement of the facts which will generally apply to all of the cases involved. Where necessary, such facts will be amplified in ·dealing with each individual action.

## STATEMENT OF THE FACTS

From October 21, 1960, until March 15, 1961, the defendants engaged in picketing of the "Ore Monarch," a Liberian vessel owned by Universe Tankships, Inc. (Universe), a Liberian corporation, with its principal place of business in Bermuda. This foreign flag vessel was chartered by Navios Corporation (Navios), a Liberian corporation, with its principal place of business in Nassau, the British West Indies.

The vessel in question was flying the Liberian flag and employed alien seamen when it arrived at Pier 122 in South Philadelphia with a load of iron ore from Venezuela.

The ship was met by a picket boat bearing signs protesting the substandard wages and working conditions allegedly prevailing on the ship. These signs bore the legend of the defendant Union, International Maritime Workers Union (I. M. W. U.).

After the vessel was docked it was not permitted to undock. The picket boat

also prevented the tugboat companies, P. F. Martin, Inc. (Martin) and Curtis Bay Towing Company of Pennsylvania (Curtis) from undocking other Universe and Navios vessels in addition to the "Ore Monarch."

In order to make their picketing more effective, officials of the I. M. W. U., N. M. U., Seafarers' International Union (S. I. U.) and the International Longshoremens' Association (I. L. A.) prevailed upon employees of the Pennsylvania Tidewater Dock Company (Tidewater) to refrain from unloading Universe and Navios ships. Pickets were posted at the boundary of Tidewater's property, and this prevented further unloading. This action thereby deprived the Pennsylvania Railroad Company (Railroad) of revenues it normally would have received from shipping the cargo after it was unloaded by Tidewater. The Railroad also owned the unloading facilities operated by Tidewater pursuant to a contract between the parties.

The object of this labor activity was a concerted campaign on the part of N. M. U. and S. I. U. to organize the alien seamen employed by Universe and Navios. All of the plaintiffs seek damages from the defendants for the losses they sustained by reason of this picketing and interference with their business and contractual relationships with labor unions, customers, suppliers and others.

### Navios and Universe Actions, Civil Actions Nos. 29757–29758

The Complaints in each of these two actions plead a claim under § 303 of the L. M. R. A. as the source of the Court's jurisdiction. No other cause of action is asserted.

Only the N. M. U.'s motion is directed at these foreign shipowners. The thrust

of the motion is that both claims should be dismissed "as the activities of foreign-flag vessels are not in 'commerce'" as defined in the L. M. R. A. 29 U.S.C.A. § 152(6).

It is the opinion of the Court that these two actions are governed by the decision of the United States Supreme Court in Benz v. Compania Naviera Hidalgo, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957). This case held that the L. M. R. A. does not apply to a suit alleging damages by a foreign owned and operated ship for losses resulting from picketing, even though three American Unions participated in such picketing in an American port.[1] The basis of this holding is that Congress intended the L. M. R. A. to provide a statutory remedy for *American* concerns and *American* unions only, in their labor disputes.

The Supreme Court affirmed the Court of Appeals holding that the provisions of the L. M. R. A. did not provide a foreign shipowner with a *federal statutory* remedy. However, the Supreme Court also affirmed the foreign plaintiff's recovery of damages under *common law* principles in accordance with the applicable state law.

Therefore, while we must dismiss the complaints in both of these actions which are bottomed on § 303 of the L. M. R. A., such dismissal is without prejudice to the plaintiffs' right to file amended pleadings asserting their claims under the common law or any other theories which they may deem applicable.[2]

### Curtis and Martin Actions Civil Actions Nos. 29759 and 29760

Curtis and Martin are *American* tugboat companies employing *American* seamen that perform tugboat services for the plaintiffs in the Philadelphia area.

---

1. The Benz case was relied upon by the Supreme Court in two subsequent cases: McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1962) and Incres Steamship Co., Ltd. v. International Maritime Workers Union, 372 U.S. 24, 27, 83 S.Ct. 611, 9 L.Ed.2d 557 (1962). In Incres the Court held that the "maritime operations of foreign-flag

ships employing alien seamen are not in 'commerce' within the meaning of § 2(6), 29 U.S.C. § 152(6)."

2. These *foreign shipowners* not being subject to the jurisdiction of the L. M. R. A. have the right to proceed as in an ordinary civil suit.

Both of these plaintiffs have filed two causes of action under § 303 and § 301 of the L. M. R. A. 29 U.S.C.A. §§ 187, 185. The claim under § 303 seeks damages for losses resulting from the picketing which was allegedly intended to force the plaintiffs to cease doing business with the foreign shipping companies and Norton-Lilly Co., Inc., an American concern.[3]

The second cause of action under § 301 seeks damages for the alleged interference by the defendant Unions with existing collective bargaining contracts which Curtis and Martin had with certain other local unions not parties to these actions. It is alleged that this interference induced the plaintiffs' employees to engage in work stoppages thus violating their collective bargaining agreements.

The defendant N. M. U. contends the first cause of action under § 303 should be dismissed for lack of jurisdiction because the labor dispute centers around the maritime activities of foreign ships employing alien seamen which are not in commerce under § 152(6) of the L. M. R. A.

We find this position to be untenable. The mere fact that the defendants' main dispute was directed at persons not subject to the jurisdiction of the L. M. R. A. does not automatically disqualify these *American* concerns from the protections of the Act. It cannot be gainsaid that the activities of Curtis and Martin, both American concerns, affect commerce within the meaning of § 152 (6). Also, the secondary boycott giving rise to these lawsuits is certainly a dispute between *American* employers and *American* unions and comes within the purview of § 303. Benz v. Compania Naviera Hidalgo, supra, footnote 5. See Madden v. Grain Elevator, etc., Workers, I. L. A., Local 418, 334 F.2d 1014, 1019 (7 Cir. 1964). The jurisdictional infirmity which precludes the foreign shipowners from bringing suit under § 303 does

not vitiate these actions by *American* concerns. Turning now to the second cause of action—under § 301 of the L. M. R. A., 29 U.S.C.A. § 185. The S. I. U. as well as the N. M. U. seek dismissal of this claim. Two years ago, the S. I. U. made a similar motion to dismiss which was denied by our learned colleague, Judge Van Dusen, as reported in 206 F.Supp. 741 (E.D.Pa.1962). In the course of his opinion, Judge Van Dusen stated the following at p. 743:

"Section 301 enables unions to sue and be sued for violation of contract. The present plaintiffs have no contract with any of the defendants."
* * *

"These allegations do not assert violation of a contract to which defendants are a party, but rather sound in tort for recovery for inducing breach of contract or interfering with business relationships. Although the question is not free from doubt, the undersigned concludes that the second cause of action is not the type contemplated by the legislators who enacted § 301 and cannot be sustained under that section." (citing cases).

Although Judge Van Dusen held that no statutory claim had been made out, he upheld the second cause of action on common law principles and pendent jurisdiction.

The defendants assert that the law has been clarified by the United States Supreme Court in the recent decision, Local 20, Teamsters, etc. Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). In this case the Supreme Court held that state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities. Mr. Justice Stewart, speaking for the Court, stated the following at p. 257, 84 S.Ct. at p. 1257:

"We disagree with the Court of Appeals that this question can be

---

3. Norton-Lilly Co., Inc., represents the foreign shipping companies and engages the tugboat companies to perform serv-

ices in relation to the foreign vessels involved.

resolved either by reference to the doctrine of pendent jurisdiction or by reference to the line of precedents which have permitted state law to be applied in situations where union activities involving violence were present."

■ In an attempt to overcome this lucid statement of the law, the plaintiffs contend that their second cause of action should be retained on general principles of federal maritime law. They seek to restrict the Supreme Court's holding in Morton to its facts which concerned a *land based* claim bottomed on state law.

We reject this shortsighted interpretation of the law as being contrary to Congress' announced national labor policy. When Congress enacted § 303 it did so with the expressed intention of creating a balance of power between labor and management. If there exists any such federal maritime law which would upset this balance of power by making the same conduct regulated by § 303 also actionable under federal maritime principles, then it too must bow to the supremacy of federal statutory law. "In short, this is an area 'of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed *governed by federal law having its source in those statutes*, rather than by local law.'" Local 20, Teamsters, etc. Union v. Morton, supra, p. 261, 84 S.Ct. p. 1259 (emphasis supplied).

■ We therefore hold that the cause of action under § 301 must be dismissed for failure to state a claim upon which relief can be granted.[4] This disposition leaves only the § 303 claim remaining in both suits. With regard to the plaintiffs' actions under § 303—their particular claims for punitive damages and counsel fees are likewise dismissed since § 303 only permits the recovery of compensatory damages.[5]

## Railroad and Tidewater Actions, Civil Actions Nos. 29761 and 29762

The Railroad has filed its only action under § 303 seeking damages for revenue lost when the defendants' picketing prevented Tidewater from unloading the ships and then loading the ore into the Railroad's freight cars for later shipment. The Railroad owns the unloading facilities and would have received an additional 20 cents per ton from Tidewater, for each ton of ore unloaded from the vessels. Punitive damages and attorneys' fees are also sought.

A previous motion to dismiss by the S. I. U. was denied by Judge Van Dusen in 1962. 206 F.Supp. 797 (E.D.Pa.1962). In that motion the S. I. U. contended that the secondary activity was directed at Tidewater and not the Railroad, and therefore was not actionable. The Court held that the relationship between the Railroad and Tidewater was not too remote as to bar recovery under federal law.

The present motion is made by the N. M. U. It asserts the same arguments advanced in the other cases; namely, that since the labor dispute centers around the maritime activities of foreign ships which are not in commerce there does not exist any *statutory* jurisdiction under § 303.

■ We find the Railroad's activity to be within the commerce definition of the Act and that its right of action is unaffected by the jurisdictional defects present in the Navios and Universe controversies. The claims for punitive damages and counsel fees are dismissed for

4. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

5. "'Punitive damages for violations of § 303 conflict with the congressional judgment, reflected both in the language of the federal statute and in its legislative history, that recovery for an employer's business losses caused by a union's peaceful secondary activities proscribed by § 303 should be limited to actual, compensatory damages." Local 20, Teamsters, etc. Union v. Morton, supra, p. 260, 84 S.Ct. p. 1258. (Also see footnote 16 on p. 260, 84 S.Ct. on p. 1259, concerning counsel fees as being non-recoverable).

the same reasons previously enumerated in the Curtis and Martin actions.

The Tidewater suit presents two causes of action, the first is pleaded under § 303, and the second *purports* to assert a "common law diversity claim" against the *individual representatives* of the defendant unions. This *second claim* was subject to a prior motion to dismiss by the S. I. U. and one of the individual union representatives. 206 F.Supp. 764 (E.D. Pa.1962). Judge Van Dusen granted the motion as to the defendant Cardullo "without prejudice to the right of plaintiff to file an amendment to the Complaint, making a claim against him as an individual only and not as a representative of a labor organization if the facts permit such amendment." (see p. 766).

Our examination of the record reveals no such amendment as having been filed.

The present motion is filed by the N. M. U., I. L. A., I. M. W. U., Richard Askew, Louis Parise and Shannon J. Wall. The motion is directed at the § 303 cause of action and the common law cause of action.

■ For the identical reasons previously expressed, the motion attacking the § 303 cause of action for compensatory damages is denied, but such motion is granted insofar as the various claims for punitive damages and counsel fees are pleaded under § 303.

■ The "common law" cause of action is based on the same conduct alleged in the § 303 claim. We note that Tidewater incorporates paragraphs 3 to 13 inclusive of the first cause of action into the second claim. Paragraphs 4 through 8 name the Unions as defendants and are incorporated by paragraph 17. As to these union defendants there is no jurisdiction on common law principles to award damages under state law. Local 20, Teamsters, etc. Union v. Morton, supra.

■ The plaintiff argues in its brief that the second cause of action is directed only at the individual defendants named: Askew, Wall, and Parise under the common law of Pennsylvania. However, as we read the Complaint each of these defendants is named in paragraphs 18, 19 and 21 as either an officer or responsible representative of the defendant unions. Proof of the second claim will depend upon the establishment of the Unions' liability under the § 303 claim. If these individual defendants are found liable, it will automatically make the unions liable since under § 301(b) a union is liable for the acts of its agents. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Both of these claims are inextricably intertwined.

■ To require individual union officers to respond in damages for their *authorized* [6] acts, done on behalf of the union, under any theory of state law would be contrary to the national labor policy. For these reasons Tidewater's *second action is governed by the N. L. R. A. and must be dismissed for failure to state a claim upon which relief can be granted.*[7] Atkinson v. Sinclair, supra, p. 249, 82 S.Ct. p. 1325.

## ORDER

AND NOW, this 16th day of December, 1964, in Civil Actions Nos. 29757 and 29758 the defendants' motions to dismiss are granted as to the § 303 cause of action without prejudice to Navios and Universe to file amended Complaints asserting their claims under the common law or any other applicable theories.

It is further ordered that in Civil Actions Nos. 29759, 29760, 29761 and 29762, the defendants' motions to dismiss the § 303 cause of action in each Complaint are denied as to the plaintiffs' respective claims for compensatory damages; but such motions are granted insofar as the claims for *punitive damages*

6. There is no allegation that these union officers were acting in an *unauthorized* capacity.

7. Such a determination operates as an adjudication on the merits. Bell v. Hood, 327 U.S. 678, 682, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**664**

*and counsel fees* are pleaded under § 303 for failure to state a claim upon which relief can be granted.

It is further ordered that in Civil Actions Nos. 29759 and 29760 the defendants' motions to dismiss the second cause of action in each Complaint are granted for failure to state a claim upon which relief can be granted.

It is further ordered that in Civil Action No. 29762 the defendants' motion to dismiss the second cause of action is granted for failure to state a claim upon which relief can be granted.