**Anita AXELROD and Alfred Axelrod, Plaintiffs-Appellants,**

**v.**

**INCRES STEAMSHIP CO., Ltd., Defendant-Appellee, and**

**Incres Line Agency Inc., Barber Steamship Lines, Inc., Henriksen Dongfin & Kerr Steamship Co., Inc., Defendants.**

**No. 400, Docket 29336.**

United States Court of Appeals Second Circuit.

Argued May 12, 1966.

Decided July 19, 1966.

Harvey Goldstein, New York City (Goldstein & Sterenfeld, New York City, with him on the brief), for appellants.

Henry J. O'Brien, New York City (Kirlin, Campbell & Keating, New York City, with him on the brief), for appellee.

Before WATERMAN, MOORE and ANDERSON, Circuit Judges.

MOORE, Circuit Judge.

On February 3, 1961, plaintiffs were passengers on the S.S. Nassau when that ship collided with the M/V Brott. On February 3, 1962, plaintiffs filed an initial complaint for negligence on behalf of plaintiff Anita Axelrod and for loss

of service on behalf of her husband, plaintiff Dr. Alfred Axelrod, naming as defendants Henriksen Dongfin and Kerr Steamship Co. as the alleged owners of the Brott and Barber Lines and Incres Line Agency, Inc. as the alleged owners of the Nassau.

On October 3, 1962, more than one year from the date of the alleged injury, plaintiffs were granted leave to file an amended complaint naming an additional defendant, Incres Steamship Co., Ltd., as the true owner of the Nassau. Plaintiffs consented to the two conditions on which the motion to amend was granted: the amended complaint was not to relate back to the time of the filing of the original complaint, and plaintiffs were not to argue that it did. The amended complaint was filed on December 20, 1962.

The newly added defendant Incres Steamship Co. moved for summary judgment on the ground that the action against it was time-barred by a provision in the contract of passage which called for the commencement of an action for personal injuries within one year from the date of injury. The District Court granted the motion. From that judgment, plaintiffs appeal.

Appellants vigorously contend that the time-bar provision was not within the contract of passage, either expressly or by reference, and that therefore Mrs. Axelrod would not be bound by the time-bar provision unless it was somehow brought to her attention. The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897); The Kungsholm, 86 F.2d 703 (2d Cir. 1936); Maibrunn v. Hamburg-American S.S. Co., 77 F.2d 304 (2d Cir. 1935). The appellee just as vigorously maintains that the time-bar was incorporated into the contract of passage, at least by reference, and so was binding on both appellants whether or not they read the fine print on the ticket. Geller v. Holland-America Line, 298 F.2d 618 (2d Cir.), cert. denied 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 403 (1962); Baron v. Compagnie Generale Transatlantique, 108 F.2d 21 (2d Cir. 1939). We do not find it necessary to decide this appeal by application of what "concededly * * * is a very formal doctrine," The Kungsholm, 86 F.2d at 704, since we conclude that even if the time-bar provision were binding on both appellants, the appellee Incres Steamship Co. is in no position to assert that suit against it was not commenced within one year from the date of injury. We base our conclusion both upon the ambiguity engendered by the defendants as to the ownership of the Nassau and on the ample notice of the pendency of the action received by the appellee within the contractual period of limitations.

The ambiguity as to the ship's ownership began with the passenger ticket Dr. Axelrod received from his travel agency in Philadelphia. The ticket heading was as follows:

INCRES LINE

OWNER

INCRES STEAMSHIP COMPANY, LTD.

E     INCRES LINE AGENCY INC.     E

PASSAGE     General Agents for North America     PASSAGE
CONTRACT     39 BROADWAY — NEW YORK 6, N. Y.     CONTRACT

---

The heading raises many questions. Who owns the vessel Nassau? The bold face type at the top, over the word "OWNER," indicates that "INCRES LINE" is the proprietor. But then who is "Incres Steamship Company, Ltd."? And who is "INCRES LINE AGENCY INC."? Is it the agent for the owner, which is either "INCRES LINE" or "Incres Steamship Company, Ltd."? Or

are both "Incres Steamship Company, Ltd." and "Incres Line Agency Inc." "general agents for North America" for "INCRES LINE, OWNER"? All we can say with some degree of assurance is that all of the Protean manifestations, avatars, and corporate incarnations of the owner(s) and agent(s) of the Nassau seem to reside at 39 Broadway.[1]

Nothing in the remainder of the ticket dispels our initial confusion. At the end of the two-page finely written ticket appears the printed term "The Carrier" —a term employed freely in the preceding sixteen eye-defying paragraphs, but never defined therein.

Not long after the collision Dr. Axelrod received a letter dated March 27, 1961 and signed "INCRES LINE AGENCY INC." by "T. W. Jordan," informing him that "the carrier" had put up the passengers on the Nassau on the night of the premature return to port after the collision, and that "if you care to forward your hotel bill so that the expenses of that night may be calculated, we will be most pleased to extend to you the courtesy received by your fellow passengers." The letter also said that the abandonment of the voyage was authorized by the passage contract so that "there is no liability to passengers in the premises." The letterhead of the letter was almost as ambiguous as the heading of the contract. It read as follows:

Phone Digby 4-3570
Teletype No. N.Y. 1-4958

Cable Address Incres Line
Telex No. N.Y.-3680

INCRES LINE
INCRES STEAMSHIP CO. LTD.

INCRES LINE AGENCY INC.
GENERAL AGENTS

39 BROADWAY, NEW YORK 6, N. Y.

Office of Vice President
T. W. Jordan

———◆———

The letterhead does not indicate which of the three names represents the carrier. It reveals, however, that all three share the same address, phone number, cable address, and teletype number, and that T. W. Jordan is the vice president of all three (or possibly two). The signature line makes clear that the letter is from "Incres Line Agency Inc." The discussion of liability to passengers and the parallelism between "the carrier," paying the hotel bills of other passengers, and "we," offering to pay Dr. Axelrod's hotel bill, at least suggest that Incres Line Agency Inc. was, or was the authorized agent for, the carrier.

On April 3, 1961, the Axelrods' lawyer wrote to what he evidently thought was the shipowner, giving notice that his clients were injured in the collision. Quite understandably, the letter was addressed to "Incres Line Agency Inc. Attention: T. W. Jordan, Vice President." Not having heard from the company, the lawyer wrote again to the same address on June 12, 1961, giving notice of his intention to bring suit if nothing further was heard. As we have seen, suit was

1. We note in passing that this profusion of nomenclature has not been enough to satisfy the owners of the Nassau over the years. In 1958 the ship's owner appears to have been "Incres Nassau Steamship Line, Inc." Lawlor v. Incres Nassau Steamship Line, 161 F.Supp. 764 (D.Mass.1958).

commenced on February 3, 1962, by the filing of a complaint against Incres Line Agency, Inc.

The foregoing review demonstrates that appellants' failure to name Incres Steamship Co. as the owner of the Nassau is at least in part attributable to the ambiguity as to the vessel's ownership inherent both in the ticket and in the March 27, 1961 letter. Appellants' mistake caused no prejudice to the appellee. As we have recently written, "[t]he function of a statute of limitations * * * is not only to bring about a condition of repose but also to enable a potential defendant to have timely notice of any alleged dereliction." Isthmian Lines, Inc. v. Rosling, 360 F.2d 926, 927 (2d Cir. 1966); see Burnett v. New York Cent. R.R., 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). The appellee here had notice of its alleged dereliction within the contractual period of limitations. The lawyer's letters to Incres Line Agency on April 3rd and June 12, 1961 set forth the Axelrods' intention to bring suit for the injuries they allegedly suffered as a result of the collision of February 3, 1961. The filing of the complaint against Incres Line Agency on February 3, 1962, carried out the intention previously announced. There can be no doubt that these steps against Incres Line Agency gave notice to the appellee, Incres Steamship Co., that within one year from the date of injury appellants had brought suit against whom they conceived to be the owner of the Nassau. The two companies shared the same offices, the same telephone number, cable address, and teletype number, and at least one officer: T. W. Jordan.[2]

Under such circumstances it would be at once unfair and overly technical to permit the appellee to assert that suit was not commenced against it within the contractual period of limitations. We believe that appellants are entitled to a chance to try their case against the owners of the Nassau on the merits. Cf. Isthmian Lines, Inc. v. Rosling, 360 F.2d 926 (2d Cir. 1966); Gifford v. Wichita Falls & Southern Ry. Co., 224 F.2d 374 (5th Cir.), cert. denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787 (1955); County Theatre Co. v. Paramount Film Distributing Corp., 166 F.Supp. 221 (E.D.Pa. 1958); McCaffrey v. Cunard S.S. Co., 139 F.Supp. 472 (S.D.N.Y.1955); McDonald v. Chrysler Motors Corp., 27 F.R.D. 442 (W.D.Pa.1961).

Reversed and remanded.

---

2. It appears from Incres S.S. Co. v. International Maritime Workers Union, 372 U.S. 24, 83 S.Ct. 611, 9 L.Ed.2d 557 (1963), that as of the time of that case Incres Steamship Co. Ltd. was a Liberian corporation which operated two Liberian-registered passenger ships, the Nassau and the Victoria, and that Incres Line Agency Inc. was a New York corporation controlled by Incres Steamship Co. Ltd. and acting as its agent for its cruise business. The president of Incres Steamship Co., an Italian national, was also an officer and director of Incres Line Agency Inc., and conducted the business of Incres Steamship Co. from the Incres Line Agency office while he was in New York.