**PORT OF HOUSTON AUTHORITY OF HARRIS COUNTY, TEXAS, Plaintiff-Appellant,**

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, AFL–CIO, et al., Defendants-Appellees.**

No. 72–1010.

United States Court of Appeals, Fifth Circuit.

March 2, 1972.

L. G. Clinton, Jr., A. J. Harper, II, Houston, Tex. (Fulbright, Crooker & Jaworski, Houston, Tex., of counsel), Milton K. Eckert, Houston, Tex., Counsel, Port of Houston Authority, for plaintiff-appellant.

Bertram Perkel, New York City, Herman Wright, W. Arthur Combs, Houston, Tex., Schulman, Abarbanel, Perkel & McEvoy, New York City, Combs & Archer, Houston, Tex., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

BELL, Circuit Judge:

Alleging jurisdiction under 28 U.S.C. A. §§ 1331 and 1337, appellant Port Authority sought to enjoin the six defendant unions from maintaining so-called informational picket lines against selected foreign vessels in the Port of Houston. After a hearing, the district court denied injunctive relief and this appeal followed. We affirm.

The first determination made by the district court was that the matter involved a labor dispute within the contemplation of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115. Having reached that conclusion, the court then determined that it was without jurisdiction to grant injunctive relief.

The Port Authority seems to concede the fact of a labor dispute within the scope of the Act.[1] It is settled in any event that the events in controversy gave rise to a labor dispute. Marine Cooks & Stewards v. Panama Steamship Company, 1960, 362 U.S. 365, 370, 80 S. Ct. 779, 4 L.Ed.2d 797.

It is contended, however, that the conduct of the unions in interfering with foreign commerce which is protected by treaties between this country and other named countries was such as to give rise to an exception to the Norris-LaGuardia Act. As will be seen, this is not a wholly novel theory although it has not been advanced since the Supreme Court carved out another exception to the Act in Boys Markets, Inc. v. Retail Clerk's Union, 1970, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199.

Our place of beginning in resolving the question presented is the Norris-LaGuardia Act. As a historical fact, we know that it resulted from the concern of Congress over what was deemed to be an abuse of the injunctive process on the part of federal courts against unions. The approach of Congress to the problem was simple. It deprived the federal courts of jurisdiction to enter injunctions in labor disputes:

> "No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter . . . " § 1, 29 U.S.C.A. § 101.

The Act specifically denies jurisdiction to the federal courts to grant in-

---

1. The Act defines a labor dispute as follows:

    "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

    29 U.S.C.A. § 113(c).

junctive relief in the case of picketing and handbilling of the type here involved. The pertinent language, contained in § 4 of the Act, 29 U.S.C.A. § 104 is as follows:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

\* \* \* \* \* \*

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;"

The exceptions for fraud and violence are to be noted but there is no claim here of fraud or violence. The unions were jointly engaged in preacefully picketing selected foreign vessels in the Houston Port. At the time of the hearing, picket lines consisting of four pickets were being maintained at three of the forty-nine docks in the port.

The pickets carried placards and also handed out literature. The effort was to call the attention of the public to the declining job opportunities for the American seaman caused by the use of foreign vessels, and to the substandard wages and working conditions on such vessels. The public was asked not to patronize the foreign vessels. The result was that other workers refused to cross the picket lines and the foreign vessels could not be unloaded. The activities were being directed at vessels flying the Panamanian, Honduran and Liberian flags. The Port Authority alleged a large present loss of income because of this conduct of the unions.

The Port Authority urges that the activities in question violate a provision in the treaty between Liberia and this country,[2] and also constitute an impermissible interference with foreign commerce between this country and friendly foreign countries. Thus, the argument goes, an exception to the Norris-LaGuardia Act should be carved out to accommodate treaty and trade rights.

This contention must be considered in the frame of reference of other exceptions to the Act. As will be seen, some are expressly statutory, others are court-created to accommodate statutes on a *in pari materia* basis.

One statutory exception is the fraud and violence provision of 29 U.S.C.A. § 104, supra.[3] Another is the Taft-Hartley 80 day injunction provision where the president and a federal court both conclude under stated procedures that a strike will imperil the national health or safety. 29 U.S.C.A. §§ 171–182. An injunction may also be issued at the behest of the National Labor Relations Board for temporary relief in the instances of unfair labor practices or secondary boycotts. 29 U.S.C.A. §§ 160(j) and (l). Also, the enforcement of board orders in the circuit courts may take the form of an injunction. 29 U.S.C.A. § 160(h). Title VII of the Civil Rights Act of 1964 (Equal Employment Opportunities), contains an express exception to the Norris-LaGuardia Act.

---

2. Article 7 of the Treaty provides:
   "Between the territories of the High Contracting Parties there shall be freedom of commerce and navigation. The nations of each of the High Contracting Parties equally with those of the most-favored nation, shall have liberty freely to come with their vessels and cargoes to all places, ports and waters of every kind within the territorial limits of the other which are or may be open to foreign commerce and navigation."

3. Even where jurisdiction to grant injunctive relief is otherwise authorized, there are strict requirements to be followed by the federal district courts. See 29 U.S.C.A. §§ 107, 108 and 109. See also New Negro Alliance v. Sanitary Grocery Company, 1938, 303 U.S. 552, 561–562, 58 S. Ct. 703, 82 L.Ed. 1012.

The Supreme Court has recognized two additional exceptions to the Act, both in connection with other Acts of Congress. Both were justified on the basis of accommodating the will of Congress under each of the Acts.

Under one such exception, injunctive relief against a strike over minor disputes under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., was authorized. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Company, 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622. There the court reasoned that Congress intended to settle minor disputes under a form of compulsory arbitration, i. e., the Adjustment Board. The conclusion was that the injunction power was necessary to prevent the defeat of the jurisdiction of the Adjustment Board through a strike; hence the necessity of the accommodation of the Acts. 353 U.S. at 39–40, 77 S.Ct. 635. See also Railway Express Agency, Incorporated v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, 5 Cir., 1971, 437 F.2d 388.

Another exception came in the form of a decision that a district court was empowered to enjoin a strike in violation of a no-strike obligation contained in a collective bargaining agreement with a provision for binding arbitration. The contract was enforceable under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a). The Norris-LaGuardia Act was accommodated to § 301(a) and the policy of encouraging the arbitration of labor disputes. Boys Markets, Inc. v. Retail Clerk's Union, supra. See also New Orleans Steamship Ass'n v. General Longshore Workers, etc., 5 Cir., 389 F.2d 369, cert. den., 393 U.S. 828, 89 S.Ct. 92, 21

L.Ed.2d 99. In sum, the *Chicago River* case, involved statutory arbitration; *Boys Markets* involved contractual arbitration and federal jurisdiction ancillary thereto under § 301(a).

We come then to the issue presented by the Port Authority which is that we should now extend *Chicago River* and *Boys Markets* to formulate an exception for protecting foreign commerce with friendly nations on the basis of underlying treaties. The short answer to this contention is that there is a Supreme Court decision squarely to the contrary.

In Marine Cooks & Stewards v. Panama Steamship Company, supra, the union was engaged in informational picketing of the same type, for the same purpose, and in much the same style as here in the Port of Tacoma, Washington. The Supreme Court held that a labor dispute existed within the ambit of the Norris-LaGuardia Act and that the district court lacked jurisdiction to enjoin the picketing. The court specifically rejected the idea that the Norris-LaGuardia Act contained an exception for interference with foreign trade or commerce. This decision is controlling.[4] The rationale of *Boys Markets* is not such as would indicate an erosion of the holding in *Marine Cooks*.

The Norris-LaGuardia Act restriction on the power of federal courts to issue injunctions in labor disputes is virtually intact after 40 years. The exceptions to it, whether statutory or court-fashioned, are narrow indeed. The exception sought by the Port Authority here is not within any existing exception and is beyond our authority. The district court did not err in denying injunctive relief.

Affirmed.

4. We have examined three cases decided subsequent to *Marine Cooks*, each of which involved the validity of injunctions against unions or National Labor Relations Board activities in connection with foreign vessels or crews. See International Longshoremen's Association, AFL-CIO v. Ariadne Shipping Company, 1970, 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218, McCulloch v. Sociedad Nacional, etc., 1963, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed. 2d 547, and Incres Steamship Company v. International Maritime Workers Union, 1963, 372 U.S. 24, 83 S.Ct. 611, 9 L.Ed.2d 557. These cases involved the jurisdiction vel non of the National Labor Relations Board and are inapposite.