**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO; South Atlantic & Gulf Coast District, ILA, AFL–CIO; Locals 872 and 1273, ILA, AFL–CIO, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**American Farm Bureau Federation, et al., Intervenors.**

**No. 82–2281.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 19, 1983.

Decided Dec. 20, 1983.

Charles R. Goldburg, New York City, with whom Thomas W. Gleason and Ernest L. Mathews, Jr., New York City, were on the brief, for petitioners.

Susan L. Dolin, Atty., N.L.R.B., Washington, D.C., for respondent. Elliott Moore,

Deputy Associate Gen. Counsel, John G. Elligers and Lawrence Jacob Song, Attys., N.L.R.B., Washington, D.C., were on brief, for respondent.

John J. Rademacher and C. David Mayfield, Washington, D.C., were on brief, for intervenors.

Before MIKVA and GINSBURG, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

■ The petitioners in this case (ILA or Union) have insisted on the right of their members to exercise a political protest by refusing to handle Russian ships and cargo. The current series of cases, of which this is one, arises from an effort to protest the Russian invasion and occupation of Afghanistan. As persistently as the Union has sought to claim this right of refusal, the National Labor Relations Board (NLRB or Board) has insisted that this refusal constitutes an illegal secondary boycott and violation of section 8(b)(4) of the National Labor Relations Act (Act). We agree with the Board and order enforcement of its order.

Shortly after the Soviet Union invaded Afghanistan in 1979, the United States imposed an embargo on exports to the Soviet Union. Certain grain shipments, including the shipment specifically involved in this case, were exempt from the embargo. The ILA, however, apparently of the opinion that there should be no exemptions from the embargo, adopted a resolution that its members would not handle any goods being exported to, or arriving from the Soviet Union.

We here address a Houston Local's implementation of this national policy. Sovfracht Chartering Corporation, a Soviet government maritime agency, was engaged to transfer a duly exempted and licensed grain shipment to the Soviet Union and chartered a Belgian ship, *The Belgium,* to transport the grain from the port of Houston. Under the collective bargaining agreement then in effect between the ILA and Houston stevedore companies, the stevedore companies had to hire all longshoremen employees from ILA hiring halls. When TTT Stevedores, a party to the collective bargaining agreement, sought to load the Soviet-bound grain onto *The Belgium,* they were informed by the ILA local representatives that the Union would not supply longshoremen, pursuant to the ILA resolution. When Sovfracht was advised of this refusal, it cancelled *The Belgium*'s stop in Houston while the ship was still at sea.

The Administrative Law Judge (ALJ) who first heard the case, brought by the Board's General Counsel, found that ILA's activities were not "in commerce" within the meaning of the Act and therefore no violations existed. The NLRB reversed this finding and issued the order under review. Notwithstanding some feeble efforts by the ILA to deny a few details of what occurred, it is clear that if the transactions in question were "in commerce," the conduct of the Union violated section 8(b)(4) of the Act and the Board accordingly had jurisdiction to enter its order.

Section 8(b)(4) of the Act makes it an unfair labor practice for a union or its agents to induce a refusal to handle goods or provide services where the object is to force or require any person "to cease doing business with any other person." As with the rest of the Act, the touchstone for its application must be that the persons involved or affected are engaged "in commerce." The Act defines commerce to include trade or commerce "between any foreign country and any state." 29 U.S.C. § 152(6) (1976). ILA seeks to avoid the broad brush of this definition and the obvious consequences of their conduct on "commerce" by stretching an inapposite exception to the Act.

In a line of cases beginning with *Benz v. Compania Naviera Hidalgo,* 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957), the Supreme Court has precluded Board jurisdiction over certain aspects of foreign ship operations. In *Benz,* the Court held that picketing by an American union in support of striking

foreign crew members was not within the reach of section 8(b)(4) because the internal labor relations of foreign crews on foreign vessels was not the kind of labor dispute that Congress fashioned the Act to resolve. Significantly, the Court further noted in *Benz* that absent a clearly expressed congressional intent, it would not "run interference in such a delicate field of international relations." *Id.* at 147, 77 S.Ct. at 704. The progeny of the *Benz* case, all holding that the Act did not apply, consistently turned on the rationale that the Act could not be used to regulate labor relations on foreign vessels. *See, e.g., Windward Shipping, Ltd. v. American Radio Association,* 415 U.S. 104, 94 S.Ct. 959, 39 L.Ed.2d 195 (1974); *Incres Steamship Co. v. International Maritime Workers Union,* 372 U.S. 24, 83 S.Ct. 611, 9 L.Ed.2d 557 (1963). To try to squeeze this case into the *Benz* exception to Board jurisdiction places an unmanageable load on the single fact that the ship in question had a foreign bottom.

The Union's reliance on *Benz* and its progeny is misplaced because none of ILA's conduct here was aimed at influencing working conditions aboard *The Belgium.* Its policy resolution did not have any pertinence to the way Sovfracht or *The Belgium* managed its labor relations. The resolution sought to influence the very essence of commerce—trade between two sovereigns. The *Benz* line of cases is simply inapposite.

The deficiencies of the ILA's legal analysis are compounded by the holding and language of *ILA v. Allied International, Inc.,* 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982). In addressing a boycott identical to the boycott involved in this case, a unanimous Supreme Court found that the Board had jurisdiction. Since the events in *Allied* were "played out by an All-American cast," the Court found that the *Benz* "tradition of restraint in applying the laws of this country to ships of a foreign country ... is irrelevant." 456 U.S. at 221, 102 S.Ct. at 1662. If that had been the only justification for finding that the NLRB had jurisdiction, *Allied* might well be distinguishable. But almost as if in contemplation of this case, the Court also recognized two

additional reasons for finding that the ILA's boycott efforts affected commerce and therefore were under the Board's jurisdiction. The Court specifically found that the ILA had become involved in foreign policy as a result of the boycott, and after noting that the State Department was concerned about ILA's conflict with foreign policy interests, the Court concluded that "[f]ederal jurisdiction is supported by the national interests affected by the ILA." 456 U.S. at 221 n. 17, 102 S.Ct. at 1662 n. 17. The Court also pointed out the serious consequences of a "no jurisdiction" holding on such boycott conduct:

> Were the effects of this boycott not "in commerce," complaining parties ... could seek relief in state courts. The possibility of conflicting decisions by a multitude of state courts frustrates one of the basic purposes of the NLRA—to establish a uniform national labor policy.

*Id.*

Neither the "national interest" rationale nor the "conflicting decisions" rationale rest on the registry of the ships involved. Logically, both points thus apply here and mandate our enforcement of the Board's order. Because the ILA boycott in the instant case involved precisely the same policy ramifications as were present in *Allied,* any suggestion that the Supreme Court's policy concerns would not be equally applicable is meritless. More importantly, the consequences of conflicting decisions would be magnified immensely if we were to hold that a boycott would be subject only to state court restraints if carried out against a foreign ship, but would be illegal under federal law if carried out against a ship of American registry. The illogic of such a dichotomy would make a joke of federalism and would frustrate any attempt to achieve a uniform national labor policy.

Afghanistan was not the first occasion where the ILA found it necessary to express unhappiness with Soviet conduct. During the Cuban missile crisis, the ILA refused to load either American or foreign ships that traded with Cuba. In a case on

all fours with this one, the ILA had refused to load a foreign-flag ship. The Fourth Circuit found that the NLRB had jurisdiction and that the boycott affected commerce. *NLRB v. International Longshoremen's Association (Ocean Shipping Service, Ltd.),* 332 F.2d 992 (4th Cir.1964). The court distinguished the *Benz* cases as "relat[ing] to ship-board labor relations, something very different from the present case." *Id.* at 995. The court, however, went on to find that the Board nevertheless could not act because the ILA's conduct involved a "political dispute" as opposed to a "labor dispute." We have no difficulty in finding that *Allied* effectively eliminated the "political dispute" justification for ILA's conduct. *ILA v. Allied International, Inc.,* 456 U.S. at 224–26, 102 S.Ct. at 1663–64 (no exemption for "political" secondary boycott); *see also Jacksonville Bulk Terminals v. ILA,* 457 U.S. 702, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982) (Norris-LaGuardia Act applies to politically-motivated work stoppage).

■ ILA also contends that the Board erred in improperly inferring that the object of ILA's conduct was to require other persons to "cease doing business" within the meaning of section 8(b)(4). We find no merit in the contention. Arguably, the contention is precluded; the Union has presented it to this court on two previous occasions, and in both cases the court preemptorily dismissed the argument. *See, e.g., ILA v. NLRB (Allied International, Inc.),* 702 F.2d 1206 (D.C.Cir.1983) (petition for review denied). More important, the Supreme Court upheld an NLRB finding of an 8(b)(4) violation under identical circumstances.

The Board urges that the Union did not properly present and preserve its contentions as to the Board's jurisdiction and as to the foreign flag consequences of the action under review. While the Union could have been more precise in its arguments to the Board, it seems reasonably clear that the Board was aware of the challenge to its jurisdiction and of the distinctions that the Union was seeking to draw between this case and its previously unsuccessful efforts

to affect the foreign policy of the United States.

There are indeed cases where the Board ought not seek to assert the policy objectives of the National Labor Relations Act. As the *Benz* case makes clear, Congress did not intend to regulate labor conditions aboard foreign vessels. It is, however, a nonsequitur to extend that limitation to a case where the involvement is not with labor policy of a foreign state but the foreign policy of the United States. There is no reason why the Board cannot act to restrain conduct so clearly within the reach of section 8(b)(4) of the Act, whether the Union targets ships foreign or domestic. The petition for review is denied and the Board's order will be enforced.

*It is so ordered.*