NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JOSEPH ANTELL, INC., Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MALONE KNITTING COMPANY,
Respondent.

Nos. 6619, 6657.

United States Court of Appeals
First Circuit.

Heard March 4 and April 5, 1966.

Decided April 20, 1966.

No. 6619:

Warren M. Davison, Atty., N. L. R. B., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., Washington, D. C., were on brief, for petitioner.

Lawrence M. Kearns, Boston, Mass., with whom Loretta W. Holway, Boston, Mass., Arthur P. Menard, Boston, Mass. and Morgan, Brown, Kearns & Joy, Boston, Mass., were on brief, for respondent.

No. 6657:

Margaret M. Farmer, Atty., N. L. R. B., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., Washington, D. C., were on brief, for petitioner.

Paul R. Cox, Dover, N. H., with whom Stanley M. Burns and Burns, Bryant, Hinchey & Nadeau, Dover, N. H., were on brief, for respondent.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

At two separate sittings we have been presented with two unconnected petitions to enforce orders of the National Labor Relations Board which we will combine in one opinion for, hopefully, the greater clarification of each. Only one issue merits discussion in either case.[1]

This question, in both cases, is whether the Board's finding that the discharge of a particular employee was an unfair labor practice was supported by the necessary evidence, NLRB v. Whitin Machine Works, 1 Cir., 1953, 204 F.2d 883, of knowledge on the part of the employer of the employee's union activities. In the first case we find it was not, in the second we find that it was.

We consider first Joseph Antell, Inc. This company operates retail ladies' shoe stores, one of which is in Boston. It has, normally, ten shoe salesmen in the Boston store. On a certain Thursday, after a conversation in which Joseph Antell had told the applicant, one Orr, that there was a union decertification proceeding pending and Orr had replied that he had no interest in the union, Orr was employed as a Boston salesman, starting Monday. On the following Wednesday or Thursday, Orr asked permission to order some shoes for himself from the supplier's catalogue and Matthew Antell told him he could order whatever he wanted. On Thursday evening, at an off-the-premises meeting, Orr urged his fellow employees to vote in favor of the union. Saturday he was discharged, allegedly because respondent had, through a misunderstanding, overstaffed itself.

In the second case, two outside organizers stood near the plant of Malone Knitting Company of Wolfeboro, New Hampshire on April 6, distributing flyers announcing a union meeting on April 8. On April 9 employee Ruth Oulton distributed five or six union cards while at her machine, and received them back in the same area. In addition, she spoke to three or four employees about the merits of the union. Her testimony that this occurred "in the plant" was not cross-examined. On April 12 Oulton was "laid off" allegedly because of the slowness of

---

1. Another issue in each instance, the employer's contest of a section 8(a) (1) finding based upon incidents unrelated to the ones under consideration, is adequately covered in the Board's opinions. Forecasts by an employer of dire financial consequences in case of unionization may be regarded as threats if they are not shown to be based upon fact. NLRB v. Whitelight Prod. Div., 1 Cir., 1962, 298 F.2d 12, 14, cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288. In Case No. 6657 there was, in addition, a discharge of an employee not referred to in the body of our opinion. We find the Board's treatment of that matter dispositive.

her work. Admittedly she did no less work, and did better quality work, than some other employees who were not discharged. Oulton had been with the company ten years, during all of which time her work was slow, but she had never been warned that she was in danger of discharge. Because of the short supply of labor capable of operating an admittedly difficult machine, the company was obliged to replace her with untrained, inexperienced help.

In both cases, the Board found that the benign reason the company assigned for the discharge was not the true reason, and that the real reason was the employee's union activity. In both cases, admittedly, there was no direct evidence that the employer knew of this activity.

In *Antell*, the trial examiner based his finding of knowledge upon "the small number of employees in the store, and all the foregoing circumstances," *i. e.*, other facts, some of which we have mentioned. The majority of the Board affirmed, on the same grounds. The opinion stated that the third member of the panel agreed with the trial examiner's conclusion without relying upon the small number of employees. It is, accordingly, a necessary implication that the majority felt obliged to rely, in some measure, upon this factor.

In *Malone Knitting Company*, the majority of the panel found against the employer, stating,

> "[T]he lack of direct evidence as to whether Respondent knew of Oulton's union activities does not preclude us from finding, on the basis of the strong circumstantial evidence as to such knowledge, the hurried and precipitate nature of the discharge, and Respondent's unconvincing explanation therefor, that Respondent was in fact motivated in discharging her by its opposition to her union activities."

One member dissented, characterizing the "circumstantial evidence as to * * knowledge" as ' principally, the small size of Respondent's plant and the community where it was located." This, in his opinion, was not enough.

We are thus faced squarely with the so-called small plant doctrine, of which it has been said that this court was the father. NLRB v. Abbott Worsted Mills, Inc., 1 Cir., 1942, 127 F.2d 438. Whether we are the parent or not, we recognize it, to the extent that we do, not as a rubric, but only insofar as it furnishes a logical basis for an inference. It could not be inferred, for example, that because of the small number of employees in Antell's store it was more likely that there was an undetected informer present. If anything, the inference should be the other way. The Board may have thought here that the leader of the decertification movement had reported to the employer, but this should have been a matter of inquiry, which was not made, not of suspicion. NLRB v. Ace Comb Co., 8 Cir., 1965, 342 F.2d 841, 848. Actually, the term small plant doctrine is quite misleading. The smallness of the plant, or staff, may be material, but only to the extent that it may be shown to have made it likely that the employer had observed the activity in question. Cf. NLRB v. Abbott Worsted Mills, supra, 127 F.2d at 439 ("common talk in the mill"). This can have no application to an off-hour, off-the-premises, meeting, which was all that was proved in Antell. Hadley Mfg. Corp., 1954, 108 N.L.R.B. 1641; cf. NLRB v. Roberto Alvaro Mfg. Inc., 1 Cir., 1964, 327 F.2d 998; NLRB v. Chicago Perforating Co., 7 Cir., 1965, 346 F.2d 233. See also NLRB v. National Paper Co., 5 Cir., 1954, 216 F.2d 859, 862–863; NLRB v. Ace Comb Co., supra. To apply a small plant rule in such circumstances would in effect put an entirely arbitrary burden on operators of small establishments—a burden that we could not support.

It follows that since a majority of the Board in *Antell* was unwilling to find against the respondent without giving weight to "the small number of employees in the store," which, on the facts shown, was of no probative value and therefore could not add weight, this aspect of the Board's order in that case cannot be supported.

In *Malone Kitting Company,* the employee's activity took place openly in the plant, during business hours. Standing alone, since there was no affirmative evidence that management saw her, this might still be a weak and insufficient basis to infer knowledge. However, unlike *Antell,* where there was not even a possibility of observation, and therefore not even a weak basis for an inference which could be reinforced, here there was at least a possibility which might be thought sufficient if there was other, affirmative, evidence indicating the likelihood that the employer in fact knew.

■ The majority of the Board found this reinforcement in the nature of the discharge. This was not by the mere disbelief of the employer's given reason. The mere disbelief of testimony of itself establishes nothing. Janigan v. Taylor, 1 Cir., 1965, 344 F.2d 781, 784, cert. den. 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120. Affirmative proof, however, that the reason given was false warrants the inference that some other reason was being concealed. Cf. Dirring v. United States, 1 Cir., 1964, 328 F.2d 512, cert. den. 377 U.S. 1003, 84 S.Ct. 1939, 12 L. Ed.2d 1052 (false alibi). If the employer is independently shown to have an antiunion animus which the discharge would gratify, it may be a fair inference that this was the true reason.

■ Such a chain of circumstances, which was the case in *Malone Knitting Company,* where respondent was shown to have given a reason inconsistent with its previous practice, against its apparent interest and inconsistent with its subsequent actions, in our opinion strengthened the inference that the employer's opportunity for observation of the union activity in fact bore fruit. We accordingly hold the decision of the Board to have been warranted.

In case No. 6619 only that part of the order which relates to the section 8(a)(1) violation will be enforced.

In case No. 6657 the order will be enforced.