**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FREEPORT MARBLE & TILE CO., Inc.,
Respondent.**

**No. 6705.**

United States Court of Appeals
First Circuit.

Oct. 18, 1966.

Hans J. Lehmann, Atty., N. L. R. B., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., were on brief, for petitioner.

Norman Holtz, with whom Gordon & Leiter, Boston, Mass., was on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board based upon found violations of sections

8(a) (1), 8(a) (3) and 8(a) (5) of the National Labor Relations Act.[1] With respect to section 8(a) (1), some of the subsidiary findings of the trial examiner affirmed by the Board seem to us based upon clearly incredible testimony, notably that of the witness Louis Politano. Not only does the opinion evidence of respondent's handwriting expert directly contradicting Politano appear demonstrably correct, but we believe no rational employer would engage in some of the conduct which Politano attributed to respondent here. Indiscriminate adoption of union testimony not unnaturally provokes resistance to orders.

■■■ The order as to section 8(a) (1) must nevertheless be enforced. Respondent is clearly shown to have made threats of economic consequences to its business in case of unionization which, under our decisions, placed a burden upon it of proving justification. NLRB v. Joseph Antell, Inc., 1 Cir., 1966, 358 F.2d 880, 881, n. 1; NLRB v. Whitelight Prod. Div., 1 Cir., 1962, 298 F.2d 12, 14, cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288. This burden was not met. In addition, the Board was warranted in finding that Politano was discriminatorily discharged in violation of section 8(a) (3).

The finding as to section 8(a) (5) raises more difficult questions, only one of which need concern us. The union lost the election, and the Board based its order to bargain upon application cards previously signed by 12 of some 20 employees. These cards bore the legend, "No obligation if no election, or if Stone Cutters fail to win Election." Authorization cards, in the sense to which we are accustomed, are essentially unconditional applications for membership. We could understand, and disregard, a condition that there was to be no obligation if the union failed to obtain recognition, but the language used in the case at bar is quite different. It seems precisely chosen to permit the union to appeal for signatures under the democratic banner that all it was seeking was a right to have an election, viz., a secret ballot.[2] An employee might sign such a card in order to be a good fellow, or because it was hard to resist such an appeal, but secretly plan to vote against the union. Such a card might be signed much more readily than an unconditional request for membership.

The contention in the Board's brief that "there is nothing confusing or unusual about a union's use of authorization cards to obtain a Board election when voluntary recognition is denied," raises a straw man. We do not question that using the cards to seek an election would have been a proper use. On its face it would seem to be *the* proper use. We must regard as somewhat disingenuous the further argument that the employees were "not told that the card would be used *only* to have an election." We think the cards fairly stated that they were meaningless if no election was held.[3]

This was union-selected language. Contentions that purposely chosen conduct or gimmicks did not, in fact, have the persuasive effect they appear to have been designed for do not impress us. The union need not have made this statement if it considered it unappealing. Cf. NLRB v. Trancoa Chem. Corp., 1 Cir.,

___

1. 29 U.S.C. § 158(a) (1), (3), (5).

2. In point of fact, two employees testified that they understood an election would have to be held. Their testimony was discredited by the Board, and we do not base our opinion on it, having, generally, a dim view of post-event testimony of subjective understanding. We prefer to look to what is the natural import of language. See NLRB v. Gorbea, Perez & Morell, S. en C., 1 Cir., 1962, 300 F.2d 886, 887; Joy Silk Mills, Inc. v. NLRB, D.C.Cir., 1950, 87 U.S.App.D.C. 360, 185 F.2d 732,

743, cert. den. 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

3. The Board did not really face up to this question. In its brief before us it cites NLRB v. C. J. Glasgow Co., 7 Cir., 1966, 356 F.2d 476. In that case the cards stated that they were to be used "in support of the demand of * * * [the union] for recognition *or* for an NLRB election." (ital. suppl.) The opinion contradicts, rather than supports, the position of the Board here.

1962, 303 F.2d 456, 3 A.L.R.3d 879. In this era of labor sophistication parties should in large measure be judged by what they say at the time, not by their subsequent protestations.[4]

■■ The Board was not warranted in treating applications expressly conditioned upon there being an election as evidence of membership prior to an election. Since, as the Board properly concedes, the section 8(a) (5) order was predicated upon the existence of a union majority and there was no sufficient proof thereof, this portion of the order cannot be enforced.

A decree of enforcement will be entered to the extent hereinabove stated.

4. The *Gorbea* case, fn. 2, supra, is of particular interest. In that case we held that an employee who had signed an unconditional card could not invalidate it by testimony that she understood it was only a request for an election. The converse should obtain when the card is limited on its face.