THE AMERICAN NATIONAL RED CROSS *vs.* LABOR
RELATIONS COMMISSION; MASSACHUSETTS NURSES
ASSOCIATION, intervener.

Suffolk.   January 2, 3, 1973. — May 4, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Labor. Red Cross. Health Care Facility. Jurisdiction,* Federal
   instrumentality.

The Labor Relations Commission was warranted in finding that the
   Massachusetts Red Cross Blood Program was a health care facility
   employer subject to its jurisdiction under G. L. c. 150A where it
   appeared that ninety-nine per cent of the Program's activities con-
   sisted of the collecting and processing of blood and blood products
   and their distribution to nonprofit hospitals in the Common-
   wealth, that the Program collected and processed seventy per cent
   of all the whole blood transfused in the Commonwealth, that
   ninety-nine and one-half per cent of the Program's funds were
   received from nonprofit hospitals in the Commonwealth, and that
   the Program operated with considerable autonomy within the
   Commonwealth, particularly in its relationship with its employees,
   although it was subject to certain supervisory controls by the
   American National Red Cross. [527–529]
Although the Massachusetts Red Cross Blood Program is an instru-
   mentality of the United States for purposes of immunity from
   State taxation levied on its operations, it is not immune from
   the State Labor Relations Law, G. L. c. 150A, where the appli-
   cation thereof does not impede or burden the Program in the
   performance of its governmental functions. [529–532]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on June 3, 1971.

The case was reserved and reported by *Spiegel, J.*

*Robert S. Zollner* for the petitioner.

*Ruth M. Paven* for the Massachusetts Nurses Associa-
tion, intervener.

*Alexander Macmillan (Robert J. Gaynor* with him) for
the Labor Relations Commission.

TAURO, C.J.   The petitioner, The American National
Red Cross (Red Cross), filed this petition for a writ of
prohibition against the Massachusetts Labor Relations

Commission (Commission) to prevent the Commission from taking any further action on a representation petition filed by the Massachusetts Nurses Association (Association) pursuant to G. L. c. 150A, § 5 (c), as amended. The Association sought certification as the exclusive bargaining representative of a unit of registered nurses employed by the Massachusetts Red Cross Blood Program (Program). The Red Cross appeared specially before the Commission and filed a motion to dismiss for lack of jurisdiction on the ground that the Program was an integral part of the Red Cross which is a Federal instrumentality and therefore immune from the Commission's jurisdiction. The Red Cross filed its petition for a writ of prohibition following a denial by the Commission of its motion to dismiss on the ground that the Program is a non-profit health care facility subject to the Commission's jurisdiction under the terms of G. L. c. 150A.[1]

---

[1] General Laws c. 150A, § 1 (as amended by St. 1964, c. 576, § 1, and St. 1968, c. 513, §§ 1, 2), and § 2 (as amended by St. 1964, c. 576, §§ 2, 3, and St. 1968, c. 513, § 3), in pertinent part, read:

"SECTION 1. It is further declared to be the policy of the commonwealth, in the interests of preserving the continuity and improving the quality of health care within the commonwealth: (a) to promote collective bargaining between health care facilities and their nurse employees and nonprofessional employees, except members of religious orders, irrespective of whether or not any such facility is operated for profit or as a public charity; (b) to protect the right of nurse employees and nonprofessional employees of health care facilities, except members of religious orders, to organize and select collective bargaining representatives of their own choosing; (c) to prevent lockouts, strikes, slowdowns or withholding of goods and services in health care facilities, and (d) to provide for arbitration of disputes or grievances arising between health care facilities and their nurse employees and nonprofessional employees if they cannot be adjusted through collective bargaining.

"It is further declared to be the policy of the commonwealth, in the interest of allowing certain employees full freedom of associations and to eliminate strife and other obstructions: (a) to promote collective bargaining between nonprofit institutions and their nonprofessional employees, except members of religious orders, (b) to protect the right of nonprofessional employees of nonprofit institutions, except members of religious orders, to organize and select collective bargaining representatives of their own choosing, and (c) to prevent lockouts, strikes, slowdowns or withholding of goods or services in nonprofit institutions.

"SECTION 2 . . .

"(2) The term 'employer' includes any person acting in the interest of an employer, directly or indirectly, and shall include any health care facility, and any nonprofit institution, but shall not include the

The Red Cross's petition comes before us upon a reservation and report without decision by a justice of this court upon the pleadings, including an amended petition of the Association for leave to intervene, and a stipulation of facts and exhibits.

The Red Cross's petition for a writ of prohibition raises the issue whether the Commonwealth has the power to regulate the labor practices of a local State Program chapter of Red Cross, a Federal instrumentality. Since the National Labor Relations Board (Board) has declined to assert jurisdiction over the Program in the instant case because "[its] operations are intimately related to those of non-profit hospitals which are exempt from the Board's jurisdiction," we are not faced with a situation where the Board's actual or potential jurisdiction bars the State Commission from assuming jurisdiction over the Association's petition.[2] We therefore need only consider whether the Commission has jurisdiction under the State Labor Relations Law, G. L. c. 150A, to entertain the Association's petition seeking to represent a unit of registered nurses employed by the Program.

1. The Commission's decision that the Program was an "employer" as defined by c. 150A, § 2 (2) (10), must be upheld if it is based upon substantial evidence. *Cabot Nursing Home, Inc.* v. *Rate Setting Commn.* 359 Mass. 686. The weight to be given evidence before the admin-

---

commonwealth or political subdivision thereof, except in the case of a health care facility . . . ."

"(10) The term 'health care facility' shall include any person, including the commonwealth or any political subdivision thereof, acting in the interest of an employer, directly or indirectly, and engaged, whether or not for profit or as a public charity, in the operation of a general, mental, chronic disease, tuberculosis, or other type of hospital, clinic or infirmary, of a convalescent or nursing home, of a visiting nurses association, of a public health agency, or of any related facility such as a laboratory, an outpatient department, a nurses' home or a training facility."

[2] See G. L. c. 150A, § 10 (b), as appearing in St. 1947, c. 657, § 9, which provides in part: "This chapter shall not be deemed applicable to any unfair labor practice . . . governed exclusively by the national labor relations act or other federal statute or regulations issued pursuant thereto, unless the federal agency administering such act, statute or regulation has declined to assert jurisdiction thereof." See also 29 U. S. C. § 164 (c) (2) (1970).

istrative agency is a decision left to the agency. *Haley's Case*, 356 Mass. 678.

Our review of the record in the instant case leads us to conclude that the Commission had substantial evidence before it to support its finding that the Program was a health care facility covered by the definition in c. 150A, § (2), of employers subject to the Commission's jurisdiction. The Commission found that the Program collects and processes seventy per cent of all the whole blood transfused in the Commonwealth. Ninety-nine per cent of the Program's activities consist of the collecting of blood and blood products and their processing and distribution to nonprofit hospitals in the Commonwealth. Consequently, ninety-nine and one-half per cent of the Program's funds are received from these nonprofit Massachusetts hospitals.

Moreover, there was substantial evidence before the Commission to support its conclusion that the Program "operates substantially independent from the national organization in its normal day-to-day activities and particularly in its relationsihp with its employees." Though it appears that the Program is subject to certain supervisory controls by the Red Cross, the record indicates that the Program operates with considerable autonomy within the Commonwealth. The Program functions under its own by-laws which provide for an executive committee to operate the blood program through an administrative staff. The Commission found that "The Executive Committee makes policy decisions, establishes and approves a budget, hires and discharges personnel, and raises funds. The Executive and Personnel Committees establish salaries, benefits and other conditions of employment for the employees of the Massachusetts Red Cross Blood Program."

All of these findings made by the Commission support its conclusion that "the activities of the . . . [Program] are clearly integrated with and vitally affect the operations of non-profit hospitals within the Commonwealth . . . [and that any interruption of the Program's] oper-

ations would seriously endanger the quality and continuity of health care within the Commonwealth." In light of the fact that the General Court specifically amended c. 150A in 1964 "to promote collective bargaining between health care facilities and their nurse employees" in order to preserve the continuity of health care services in the Commonwealth, see c. 150A, § 1 and § 2 (2) (10), we believe that there was substantial evidence supporting the Commission's decision that "[t]he operations of the . . . [Program] plainly come within the definition of a health care facility in [G. L. c. 150A] Section 2 (10) and within the purposes for which Chapter 576 [the 1964 amendment] was enacted."

2. However, Red Cross argues that even if the Program is a health care facility employer, it is not subject to the Commission's jurisdiction because it is an integral part of a Federal instrumentality which is immune from State regulation. Although the application of the doctrine of implied intergovernmental immunity to Federal instrumentalities has diminished in recent decades (see *First Agricultural Natl. Bank* v. *State Tax Commn.* 353 Mass. 172, 184), Red Cross contends that the Supreme Court's decision in *Department of Employment* v. *United States,* 385 U. S. 555, supports its contention that it is a "federal instrumentality entitled to immunity from the exercise of state jurisdiction over it."

But the *Department of Employment* case, *supra,* does not support such a broad sweeping immunity from all State regulation. The court held that, "the Red Cross is an instrumentality of the United States *for purposes of immunity from state taxation* levied on its operations, and that this immunity has not been waived by congressional enactment. Although there is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality, the Red Cross is clearly such an instrumentality" (emphasis supplied). Pp. 358–359. Nothing in the Supreme Court's opinion suggested or implied that the Red Cross could not be subjected to other types

of State regulation.

To the contrary, it is conceded in the government's brief in that case that "even though a State may not impose any tax on the operations of a federal instrumentality, it may enforce local regulations which do not impede or burden the instrumentality in the performance of its governmental functions." (See e.g. *Anderson Natl. Bank* v. *Luckett,* 321 U. S. 233, 247–253; *Railway Mail Assn.* v. *Corsi,* 326 U. S. 88, 95. See also *James Stewart & Co.* v. *Sadrakula,* 309 U. S. 94, 99.) Moreover, the government's motion to affirm in the *Department of Employment* case emphasized that the Red Cross was immune only from " 'a tax on the operation of an instrument employed by the Government of the Union to carry its powers into execution.' 4 Wheat. 316, 436–437. It is not to be confused with a tax on property or with other police regulations to which the Red Cross may constitutionally be subjected. *Thomson* v. *Pacific Railroad,* 9 Wall. 579; *First Nat'l Bank in St. Louis* v. *Missouri,* 263 U. S. 640; *Stewart & Co.* v. *Sadrakula,* 309 U. S. 94."

This distinction between immunity from State taxation and absolute sovereign immunity from all forms of State control is also made clear in the opinion in the *Department of Employment* case. The court acknowledged that "[i]n those respects in which the Red Cross differs from the usual government agency — e.g., in that its employees are not employees of the United States, and that government officials do not direct its everyday affairs — the Red Cross is like other institutions — e.g., national banks — whose status as tax-immune instrumentalities of the United States is beyond dispute." *Department of Employment* v. *United States, supra,* 360.

As we have already noted, the Massachusetts Red Cross Program "operates substantially independent from the national organization in its normal day-to-day activities and particularly in its relationship with its employees." Government officials do not direct its every day affairs and the Program's employees are not employees of the United States. Thus, the Program's (as well as

any national bank's) immunity from State taxation does not suggest that it cannot be subjected to other forms of State regulation which do not frustrate the Federal instrumentality's performance of its governmental functions. See *Anderson Natl. Bank* v. *Luckett*, 321 U. S. 233. Thus, in *First Natl. Bank* v. *Missouri, supra*, the Supreme Court upheld a State's power to apply its statute prohibiting the maintenance of branch banks to national as well as State banks. "National banks are brought into existence under federal legislation, are instrumentalities of the Federal Government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States." P. 656.

Immunity from taxation is granted to nongovernmental agencies like the Red Cross engaged in activities that serve a public purpose in order to relieve them from a direct tax burden on their operations which would interfere with their beneficial activities. However, the fact that the Program is immune from State taxation does not suggest to us that the Program is immune from any State regulation of its labor practices unless Congress has expressly provided for it, see *Federal Land Bank* v. *Priddy*, 295 U. S. 229, 231, or such an immunity is required by the nature of the regulated subject matter.

Certainly, Congress has not expressed any intent to immunize Red Cross from the State labor relations laws. To the contrary, 36 U. S. C. § 2 (1970), expressly grants to the Red Cross the right to "establish bylaws and regulations *not inconsistent* with the laws of the United States of America or *any State thereof*" (emphasis added). Moreover, there is no reason to imply such an immunity because the application of G. L. c. 150A to the Program will not impede or frustrate its efficiency as a "health care facility." We conclude that the Commis-

sion was correct in its finding that the application of c. 150A "will not . . . interfere with the . . . [Program's] operations . . . [because in] extending the Act to non-profit health care facilities, the General Court made unlawful any work stoppages in such facilities and established procedures for the resolution of disputes." (See G. L. c. 150A, § 4C).

We do not believe that Congress intended that the Program should be immune from any governmental supervision of its labor practices. In view of the National Labor Relations Board's declination of jurisdiction, application of G. L. c. 150A to the Program will insure the continuity and improve the quality of the public services it renders by promoting the orderly and peaceful resolution of disputes between the Program and its employees through collective bargaining and arbitration procedures.

Therefore, since we hold that the application of G. L. c. 150A to the program will not impede or burden the Program in the performance of its governmental functions,[3] there is no reason to imply any immunity from this Commonwealth's labor relations law.   See *First Natl. Bank* v. *Missouri,* 263 U. S. 640; *Anderson Natl. Bank* v. *Luckett,* 321 U. S. 233, 247–253.[4]

An order shall enter in the county court dismissing the Red Cross's petition for a writ of prohibition.

*So ordered.*

---

[3] Nowhere in the Red Cross's brief is there any convincing argument that the Commission's jurisdiction would impede any national purposes of the Red Cross. Red Cross contends that it must be able to operate "unencumbered by a multitude of varying rules and regulations established by many states." However, Congress's express provision in 36 U. S. C. § 2 (1970) that the Red Cross could only establish by-laws and regulations that were consistent with State laws seems to undermine Red Cross's argument that it must be free to establish uniform policies for all its chapters.

[4] Red Cross argues that the national bank cases do not provide a useful analogy to the problem before us of deciding whether a *nonprofit* Federal instrumentality is subject to State regulation.   We disagree.   The Supreme Court compared the Red Cross to a national bank "[i]n those respects in which the Red Cross differs from the usual government agency — e.g., in that its employees are not employees of the United States, and that government officials do not direct its everyday affairs." *Department of Employment* v. *United States,* 385 U. S. 355, 360.