NORWAY CAFE, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL COMMISSION.

Suffolk.    January 22, 1979. — February 13, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

*State Administrative Procedure Act. Alcoholic Liquors,* License. *Administrative Board,* Hearing.

In a proceeding before the Alcoholic Beverages Control Commission to determine whether a licensee had tampered with the contents of alcoholic beverages in violation of G. L. c. 138, § 16, the licensee could not object to the fact that after the close of the hearing the commission received and considered a report containing an analysis of a sample from a suspect bottle where the licensee raised no objection at the hearing to the declaration by the commission's chairman of his intent to send samples to the manufacturers for analysis and failed to exhaust other administrative remedies available to challenge the evidence after the close of the hearing. [38-40]

CIVIL ACTION commenced in the Superior Court on July 10, 1974.

The case was heard by *McNaught,* J., on a motion for summary judgment.

*Joanne L. Goulka* for the plaintiff.

*Thomas Miller,* Assistant Attorney General, for the defendant.

KASS, J. This case deals with the propriety of the use by an administrative agency of evidence obtained after the close of an adjudicatory hearing.

The Alcoholic Beverages Control Commission (Commission) suspended the alcoholic beverages license of the plaintiff (Norway) for tampering with alcoholic beverages in violation of G. L. c. 138, § 16.[1] Norway took an appeal from the action of the Commission under G. L. c. 30A, § 14. The Superior Court judge granted summary judgment in favor of the Commission and from this judgment Norway appeals. We affirm.

At the hearing before the Commission, two of its investigators testified that they had analyzed, at Norway's bar, the alcoholic content (by a process called the Williams Test) of a bottle of Beefeater gin, a bottle of Seagram's VO blended whiskey, and a bottle of Canadian Club blended whiskey. All of the bottles tested registered an alcoholic content varying from the proof standards of the distiller. For example, the Beefeater sample tested at 90 proof, although the distiller (James Burrough, Ltd.) markets its product as a 94 proof spirit. There was also evidence at the hearing that tests of samples from the suspect bottles made by the Department of Public Health showed deviations from the standard alcohol content, albeit different in degree.[2]

At the adjudicatory hearing the Commission's chairman said he would send samples of each bottle to the distiller who manufactured the product so as to enable the Commission to take into account deviations of a par-

---

[1] General Laws c. 138, § 16, provides: "Any person holding a license ... who, directly or through any agent, employee or other person, dilutes or changes or in any manner tampers with any alcoholic beverage authorized to be sold under such license so as to change its composition or alcoholic content shall be punished ....

"Possession on the licensed premises by any licensee referred to in this section of any alcoholic beverage differing in composition or alcoholic content from such beverage when received from the manufacturer or wholesaler and importer from whom it was purchased ... shall be prima facie evidence that the said beverage has been diluted, changed or tampered with in violation of this section."

[2] See G. L. c. 138, §§ 36 and 37, which provide for such tests by the Department of Public Health.

ticular batch from standard specifications for the product. Norway raised no objection to this procedure. The manufacturer of the Canadian Club reported little deviation from standard; Seagram acknowledged the VO sample as the genuine article. Allport Consulting Analysts, Ltd., which performed an analysis for the distiller of the Beefeater gin, reported the sample it tested as being significantly different from normal Beefeater gin.

The Commission, in its statement of reasons in support of its decision, as required by G. L. c. 30A, § 11(8), noted the Williams Test result, the Department of Public Health reports, and the Allport report. It is to the use by the Commission of the Allport report that Norway objects. Norway urges that the use of evidence acquired by the Commission after the close of the administrative hearing violated G. L. c. 30A, § 11(4), and thus deprived Norway of administrative due process.[3]

Although G. L. c. 30A, § 11(4), proscribes the use by administrative agencies of evidence not made part of the record, the rub for the licensee here is that it raised no objection whatever at the hearing to the declaration by the chairman of the Commission of his intent to send samples to the manufacturers. At the very least, Norway's failure to object to the Commission's solicitation of distillers' reports was a concession by Norway of the relevance of such reports. Norway finds itself in the position of having remained mute as to a particular procedure, abiding the event of decision and, finding the decision unfavorable, attacking that decision as procedurally defective. Such practice defeats orderly and efficient administrative procedure. As Mr. Justice Jackson said in *United States* v. *L.A. Tucker Truck Lines, Inc.*, 344 U.S.

---

[3] The Commission's decision was that Norway had tampered only with the Beefeater. Thus Norway's position carries with it an element of paradox. The report from the distillers of the VO and Canadian Club provided rescue to Norway. Had all the post hearing reports been disregarded, Norway would have been left without this substantial defense to the charge of tampering with the VO and Canadian Club.

33, 37 (1952), "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." See also *Merchants Fast Motor Lines, Inc.* v. *ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976).

Nor was an objection at the hearing Norway's last shot at the Allport report. The Commission's regulation 57.31, 4 Code Mass. Regs., Part 2, § 57.31 (1975), permits any party to file a motion for rehearing, reargument, or reconsideration within fifteen days after receipt of a final decision of the Commission. If Norway wished to urge upon the Commission the error of relying on the Allport report, Commission regulation 57.29, 4 Code Mass. Regs., Part 2, § 57.29 (1975), provided Norway with an opportunity "for good cause shown" to file evidentiary documents or exhibits at a time subsequent to the completion of the hearing. Regulation 57.29 places no time limitation for the filing of posthearing evidence, and we conclude that this opportunity is available to parties after a decision of the Commission for the same fifteen-day period which regulation 57.31 prescribes for a motion for rehearing. In the face of such multiple failures by a litigant to use the means available to allow an administrative agency to correct its proceedings, we do not think administrative remedies have been fairly exhausted.[4] We note also that Norway failed to ask the Superior Court to remand the case to the Commission pursuant to G. L. c. 30A, § 14(8), to permit Norway to rebut the Allport report.

Norway's reliance on *Haley's Case*, 356 Mass. 678 (1970), is ill founded. In that case there was objection at the hearing before the single member of the Industrial Accident Board to the admission of evidence on which the reviewing board later relied. See also *Boott Mills* v. *Board of Conciliation and Arbitration*, 311 Mass. 223, 225

---

[4] See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220 (1979).

(1942). The facts here more closely resemble *Russo's Case,*
1 Mass. App. Ct. 206 (1973), where the parties agreed to
the admission in evidence of certain physicians' reports
after the conclusion of the hearing. We held in that case
that, having agreed to the admission of certain medical
reports, a party could not on appeal raise the issue that
those reports were not properly before the administrative
agency.

Norway does not seriously challenge the proposition
that the Commission had before it other evidence on the
basis of which it could have voted to suspend Norway's
license. *Labor Relations Commn.* v. *University Hosp., Inc.,*
359 Mass. 516, 521 (1971). *St. Elizabeth's Hosp., Inc.* v.
*Labor Relations Commn.,* 2 Mass. App. Ct. 782, 783 (1975).

*Judgment affirmed.*