LABOR RELATIONS COMMISSION & others[1] *vs.* BLUE HILL SPRING WATER COMPANY.

Suffolk. May 17, 1979. — December 19, 1980.

Present: GOODMAN, PERRETTA, & KASS, JJ.

*Labor*, Discharge for union activity. *Jurisdiction*, Labor. *Labor Relations Commission. Federal Preemption. Notice. Due Process of Law*, Notice.

Where the Labor Relations Commission held a hearing on a complaint alleging that an employer had discharged two employees because of their union activities only after the National Labor Relations Board had postponed indefinitely its hearing on the same complaint and where the National Labor Relations Board declined jurisdiction on its complaint two weeks after the commission's hearing and prior to the issuance of the commission's order, Federal preemption did not preclude enforcement of the commission's order. [51-57]

The sending of a complaint and notice of hearing by certified mail, return receipt requested, addressed to a corporation at its principal place of business constituted proper service under G. L. c. 150A, § 7(4); the Labor Relations Commission was not required to make service on a corporation in accordance with the provision for service in a civil action under G. L. c. 223, § 37. [57-61]

In a proceeding before the Labor Relations Commission, evidence that two employees who had secretly engaged in union organizing activities at their place of work were discharged without any explanation on the same afternoon that the union had sent a mailgram to their employer stating that it represented a majority of the employees and requesting a meeting with the employer warranted a finding that the employees had been discharged for union activities, an unfair labor practice as defined in G. L. c. 150A, §§ 4(1) and 4(3). [61-63]

CIVIL ACTION commenced in the Superior Court on August 9, 1976.

The case was heard by *Mason, Nelson,* and *O'Connor,* JJ.

---

[1] John Clegg and John Russell were allowed by the court to intervene.

*Robert B. McCormack & Garry J. Wooters* for the Labor Relations Commission.

*David E. Watson* for the defendant.

*Stephen J. Kehoe* for John Clegg & another, interveners.

GOODMAN, J. These are appeals from a judgment by a three-judge panel of the Superior Court (G. L. c. 212, § 30) dismissing an action brought under G. L. c. 150A, § 6(e), by the Massachusetts Labor Relations Commission (commission) to enforce its order requiring, among other things, that the defendant company (Blue Hill) offer reinstatement to two employees, John Clegg and John Russell, the interveners. The commission found that Blue Hill had discharged them on October 31, 1974, for union activity and had thus engaged in unfair labor practices, as defined in G. L. c. 150A, §§ 4(1) and 4(3). Blue Hill filed a motion to dismiss on the ground that the "[p]laintiff's Decision and Order . . . is null and void" because it dealt with matters "subject to the exclusive jurisdiction of the National Labor Relations Board" and because Blue Hill was not properly notified of the formal hearing on which the decision and order were based. The defendant also filed an answer to the commission's complaint in this enforcement action, alleging, in addition to the matters in the motion to dismiss, that the decision and order were not supported by substantial evidence. The court dismissed the action on the first ground in Blue Hill's motion to dismiss — that Federal preemption[2] precluded enforcement of the commission's order. It therefore did not reach Blue Hill's other contentions. Since we hold that the doctrine of Federal preemption as applied to the circumstances of this case does not vitiate the commission's order, we discuss all three of the defendant's contentions. We reverse the judgment below and order that judgment enter enforcing the commission's order.

1. *Federal preemption.* On November 4, 1974, the Monday following the discharge of Clegg and Russell on

---

[2] See generally *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 190-207 (1978).

Thursday, October 31, 1974, the Teamsters Union, Local 841, on behalf of which they had been organizing, filed an unfair labor practice charge with the National Labor Relations Board (NLRB). On March 18, 1975, the NLRB issued a complaint alleging, among other things, that Clegg and Russell had been discharged for their union activities in violation of § 8(a)(3) of the National Labor Relations Act. 29 U.S.C. § 158(a)(3) (1970). The NLRB scheduled a hearing on the allegations of the complaint for May 1, 1975. Thereafter, by telegram dated April 29, 1975, the NLRB postponed its hearing indefinitely. Just prior thereto, on April 24, 1975, Clegg and Russell filed charges with the commission, alleging that their discharges on October 31, 1974, were unfair labor practices under G. L. c. 150A, §§ 4(1) and 4(3). On December 19, 1975, the commission issued a complaint alleging that Blue Hill had discharged Clegg and Russell because of their union activities and scheduled a hearing for January 12, 1976. The hearing was held as scheduled; no one from Blue Hill attended the hearing. On January 30, 1976, the NLRB dismissed its complaint. On April 2, 1976, the commission issued the decision and order which it now seeks to enforce.

The court below, in its memorandum refusing to enforce the order, ruled that "preemption remains unless and until the National Labor Relations Board . . . declines to exercise its jurisdiction" and that the commission "took significant action while the matter was pending before [the] NLRB."[3]

---

[3] The Superior Court had before it the record made by the commission (see G. L. c. 150A, § 6[*e*]) and a "Stipulation of Facts" characterized by the parties as an "agree[ment] on the following facts as evidence." The decision of the Superior Court is based solely on the undisputed sequence of events in the proceedings both before the commission and before the NLRB, giving rise to a pure question of law requiring no further findings of fact to be made or factual conclusions to be reached by the commission. In the circumstances and in the view we take of this case, the commission has no further fact finding role, and we deem it appropriate to decide the legal question posed by the Superior Court's decision without remand to the commission. *Saint Luke's Hosp.* v. *Labor Relations Commn.*, 320

Thus Blue Hill in its brief correctly characterizes "the decision below [as] demonstrat[ing] that the question turn[ed] on the legal impact of the outstanding NLRB complaint." The court and the defendant have regarded as irrelevant the fact that the commission's order was issued after the dismissal of the complaint, which, the parties conceded at oral argument, was the equivalent of a declination of jurisdiction. See 29 U.S.C. § 164(c) (1970); G. L. c. 150A, § 10(*b*).[4] Since the order came after the declination of jurisdiction, Blue Hill is left with the argument — not that the issuance of the order is preempted by the Federal labor statutes — but that it has no basis because, as put in its brief, "all action taken by the [c]ommission while the NLRB complaint was outstanding is a nullity and there is no effective hearing to support its decision."

The issue is a narrow one. It does not involve the question whether a State court should grant relief to a party to a

---

Mass. 467, 470-471 (1946). See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 451-452 (1973).

The commission, citing *Red Cross Drug Co.* v. *NLRB*, 419 F.2d 1245 (7th Cir. 1969), also points to the provision in G. L. c. 150A, § 6(*e*), as appearing in St. 1973, c. 1114, § 15, that "no objection that has not been urged before the commission . . . shall be considered by the court, unless the failure or neglect to urge such objections shall be excused because of extraordinary circumstances." But the record before us does not indicate that this provision was in any way urged before the Superior Court in connection with the specific issue on which that court decided the case, and the "Stipulation of Facts" looks to the contrary.

[4] The parties in this case chose to go behind the bare dismissal, which the "Stipulation of Facts" indicates was grounded on the conclusion by a field attorney of the NLRB "after further review and additional consideration of the financial data . . . that the [b]oard should not exercise jurisdiction over Blue Hill Spring Water Company." The defendant in its brief points to this evidence for its contention that "the NLRB determined that it did have jurisdiction and then subsequently determined that it should not exercise it" (emphasis omitted). In the absence of a more official statement of the NLRB's reasons for dismissing the charges (see *Hanna Mining Co.* v. *District 2, Marine Engrs. Beneficial Assn.*, 382 U.S. 181, 190 [1965]; *Pennsylvania Labor Relations Bd.* v. *Butz*, 411 Pa. 360, 369-372 [1963]), we proceed on the basis accepted by the parties that there was a declination of jurisdiction in this case sufficient to give the commission power to proceed after January 30, 1976. G. L. c. 150A, § 10(*b*).

commission proceeding within the primary jurisdiction of the NLRB[5] where the party seeks to forestall a determination by the commission. See e.g., *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.*, 316 Mass. 136 (1944). A request to a court to interfere in the commission's administrative process in order to vindicate the primary jurisdiction of the NLRB may occur at various stages of commission proceedings and raises difficult questions of what, if anything, is required at any particular stage to protect the NLRB's primary jurisdiction — questions which we need not answer in this case. Nor need we attempt to evaluate the administrative accommodation generally made by the commission to the NLRB's preemptive power. Compare the accommodation made by the Connecticut State Labor Relations Board as described by Professor Fleming James, while its chairman. James, State Against Federal Jurisdiction in Labor Relations, 31 Conn. B.J. 5, 9-11 (1957).

Here the Superior Court and we are asked to vindicate a primary jurisdiction which the NLRB's declination has in effect destroyed. It was plain at the time that the Superior Court received this case that the "risk of interference with the unfair labor practice jurisdiction of the Board" (*Sears, Roebuck & Co.*, 436 U.S. at 197) had been dissipated. Compare *Commonwealth* v. *Noffke*, 376 Mass. 127, 133-134 (1978). Whether the NLRB (see *NLRB* v. *Nash-Finch Co.*, 404 U.S. 138, 145-147 [1971]; *NLRB* v. *Committee of In-*

---

[5] The phrase "primary jurisdiction of the NLRB" is explicated in *Lodge 76, Intl. Assn. of Machinists* v. *Wisconsin Employment Relations Commn.*, 427 U.S. 132, 138-139 (1976) (quoting from *Motor Coach Employees* v. *Lockridge*, 403 U.S. 274, 290-291 [1971], and *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 244 [1959]), in which the United States Supreme Court said: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." See *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters*, 436 U.S. at 199 n.29.

*terns & Residents*, 566 F.2d 810, 812-813 [2d Cir. 1977], cert. denied, 435 U.S. 904 [1978]) or Blue Hill (see *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.*, 316 Mass. 136 [1944]) might have stopped the State hearing before the declination is beside the point. Neither attempted — and indeed Blue Hill made no attempt even upon receipt of the commission's decision (it was mailed to Blue Hill on April 2, 1976) — to petition for rehearing as permitted by G. L. c. 150A, § 6(*f*), or move for reconsideration as permitted by 402 Code Mass. Regs. 2.03(13) (1978). See *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 37, 39-40 (1979).

In the circumstances, we do not shut our eyes to the reality that there was, indeed, a hearing. Thus in *Incres S.S. Co.* v. *International Maritime Wkrs. Union*, 10 N.Y.2d 218 (1961), vacated, 372 U.S. 24 (1963), the New York Court of Appeals reversed the grant of an injunction against picketing a foreign vessel on the ground that the dispute was "arguably" within the jurisdiction of the NLRB. The United States Supreme Court reversed the New York Court of Appeals on the ground that "although it was arguable that the Board's jurisdiction extended to this dispute at the time of the New York Court of Appeals' decision, our decision in [*McCulloch* v.] *Sociedad Nacional* [*de Marineros de Honduras*, 372 U.S. 10 (1963), a case holding that the NLRB did not have jurisdiction over seamen on foreign vessels] clearly negates such jurisdiction now." *Incres S.S. Co.* v. *International Maritime Wkrs. Union*, 372 U.S. 24, 27 (1963). The case was remanded to the Court of Appeals "for further proceedings consistent with this opinion . . . ." *Id.* at 28. Although the opinions of both the United States Supreme Court and the New York Court of Appeals indicated that the hearing on the injunction and the issuance of the order which resulted were preempted at the time they took place, the Court of Appeals reinstated the lower court order; it did not treat the order and the hearing on which it was based as "void." *Incres S.S. Co.* v. *International Maritime Wkrs. Union*, 13 N.Y.2d 754 (1963). As this court

said in *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 90-91 (1979), answering an analogous argument that a statute could not operate to validate actions taken before its passage because the defect was "jurisdictional": — "[I]t seems dogmatic and formalistic to insist that where jurisdiction is absent at the inception of litigation, it cannot subsequently be conferred because the litigation was a nullity *ab initio.*"

We see no need for so sweeping a prophylactic rule in order to assure the integrity of the NLRB's primary jurisdiction. The impact on Federal labor policy from the mere holding of a commission hearing may be met, where it should be met at all,[6] by an action before the hearing to prevent a possible determination by the commission in a matter preempted by the Federal labor laws. *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.*, 316 Mass. at 143. *NLRB* v. *Nash-Finch Co.*, 404 U.S. 138 (1971). Such a rule would be particularly inappropriate in this case, in which the hearing was held after the NLRB had postponed indefinitely any hearing on its complaint and within two weeks of the commission hearing had declined jurisdiction. Nor do we see any justification for providing relief from the

---

[6] See *Almeida Bus Lines, Inc.* v. *Curran*, 209 F.2d 680, 683-684 (1st Cir. 1954). See also *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. at 452; *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 & n.11 (1938); *Methodist Hosp.* v. *New York State Labor Relations Bd.*, 382 F.Supp. 459, 463 (S.D.N.Y. 1974); Cox, Labor Law Preemption Revisited, 85 Harv. L. Rev. 1337, 1342-1343 (1972).

The predominant concerns expressed where State board action is overturned involve the coercive effects of the order or determination on the Federal scheme. *LaCrosse Tel. Corp.* v. *Wisconsin Employment Relations Bd.*, 336 U.S. 18, 25-26 (1949)(State certification "freezes into a pattern that which the federal act has left fluid"). *NLRB* v. *Committee of Interns & Residents*, 566 F.2d at 816 (State certification might lead to "contradictory duties and obligations"). *Pan American World Airways, Inc.* v. *Division of Labor Law Enforcement*, 203 F. Supp. 324, 325 (N.D. Cal. 1962)("repercussions of the ruling [of a State board in an action covered by the Federal Railway Labor Act] will be national in scope and will have a profound influence" on others' claims). Cf. *General Elec. Co.* v. *Callahan*, 294 F.2d 60, 67 (1st Cir. 1961), appeal dismissed, 369 U.S. 832 (1962).

hearing to Blue Hill at this late date. Apart from the issue of notice, to be discussed, Blue Hill does not claim prejudice to itself because the hearing was held prior to the NLRB declination and it did not, so far as appears, petition for rehearing (G. L. c. 150A, § 6[*f*]) or move for reconsideration (402 Code Mass. Regs. 2.03[13] [1978]). Nor did it ask the Superior Court for "leave to adduce additional evidence" before the commission. G. L. c. 150A, § 6(*e*). Cf. *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. at 39-40.[7]

2. *Notice.* Blue Hill argues, on the basis of the "Stipulation of Facts" (see n.3),[8] that, even if the hearing is otherwise viable, the commission did not give Blue Hill notice of the hearing which complied with statutory or constitutional requirements. We disagree.

The provision for notice is found in G. L. c. 150A, § 7(4), inserted by St. 1938, c. 345, § 2, and is set out in the margin.[9] It is clear from the "Stipulation of Facts," and is

---

[7]We do not treat G. L. c. 150A, § 10(*b*), separately. We agree with Blue Hill, as set out in its brief, that the statute embodies "principles of preemption which the Massachusetts Legislature has specifically adopted." See *Wheaton College* v. *Labor Relations Commn.*, 352 Mass. 731, 734 (1967), and *American Natl. Red Cross* v. *Labor Relations Commn.*, 363 Mass. 525, 527 (1973), both indicating the correlation between the board's declination of jurisdiction over a labor dispute (29 U.S.C. § 164[c][1] [1976]) and the commission's consequent power to adjudicate the labor dispute. The legislative history of the model for § 10(*b*), Conn. Gen. Stat. § 31-101(7), indicates an intent to do no more than extend State power to all cases not federally preempted. See First Report of Connecticut Labor Relations Board, 19 L.R.R.M. 91, 91 (1947).

[8]Both parties regard the "Stipulation of Facts" as a proper basis for decision on the question of notice by this court, as it would have been by the Superior Court had it reached the issue. We agree. *School Comm. of Stoughton* v. *Labor Relations Commn.*, 4 Mass. App. Ct. 262, 269 (1976). Cf. G. L. c. 30A, § 14(5) ("[I]n cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court"). Cf. also *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971).

[9]"Complaints, orders and other process and papers of the commission, its member, agent or agency may be served either personally or by

not disputed, that the complaint and notice of hearing were sent by certified mail, return receipt requested, addressed to the defendant at 46 Granite Street, Boston, Blue Hill's principal place of business.[10]  It was signed for on behalf of Blue Hill by an "office clerical" employed by Blue Hill.

We see nothing, and Blue Hill points to nothing, in the language of § 7(4) contrary to the procedure for notice used by the commission.  Service by certified mail met the requirements in the statute for service by registered mail (G. L. c. 4, § 7, Forty-fourth), and service on the corporation properly named was service on the "person required to be served."  G. L. c. 150A, § 2(1), inserted by St. 1938, c. 345, § 2 ("The term 'person' includes . . . corporations . . . .").  See G. L. c. 4, § 7, Twenty-third.

Nor is there any basis for Blue Hill's argument that the commission must make service on the corporation in accordance with the provision for service in a civil action under G. L. c. 223, § 37 (second par.).[11]

The provisions of G. L. c. 150A, § 7(4), are sufficiently detailed so that the commission, in administering those provisions, was not obliged to go beyond them.  Compare *Director of the Div. of Water Pollution Control* v. *Uxbridge*, 361 Mass. 589, 591-592 (1972).  Nor can we say that the commission exceeded its administrative discretion in not

---

registered mail, or by telegraph or by leaving a copy thereof at the principal office or place of business of the person required to be served.  The verified return by the individual so serving the same setting forth the manner of such service shall be proof of service of the same, and the return post office receipt or telegraph receipt therefor when registered and mailed or telegraphed as aforesaid shall be proof of service of the same."

[10] We deem the reference in the stipulation to that address as Blue Hill's "usual place of business" to be an inadvertence.  The defendant has not mentioned the discrepancy and we note that the charge before the commission and the complaint before the NLRB, both incorporated in the stipulation, refer respectively to that address as Blue Hill's "principal place of business" and "its principal office and place of business."

[11] That paragraph requires that, where possible, service in a civil action against "a domestic corporation . . . shall be made upon the president, treasurer, clerk, . . . agent or other officer in charge of its business."

importing the provisions of G. L. c. 223, § 37, into the notice procedure. Section 7(4) does not refer to that procedure — some indication of an intent to absolve the commission from the more onerous provisions for the commencement of civil actions. Compare G. L. c. 176D, § 6, inserted by St. 1972, c. 543, § 1, which provides for service "either in the manner provided by law for service of process in civil actions, or by registering and mailing a copy thereof to the person affected by such . . . process at his or *its* residence or principal office or place of business" (emphasis supplied) — indicating that both notice under G. L. c. 223, § 37, and notice by certified mail to "its . . . principal office or place of business" are reasonable. *James* v. *Commissioner of Ins.*, 10 Mass. App. Ct. 883, 883-884 (1980). Further, the commission could assume that a corporation would provide a procedure for funneling mail to an appropriate officer. *Nelson* v. *City of New York*, 352 U.S. 103, 107-108 (1956). If that procedure broke down, it was the responsibility of the corporation. See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 239 (1975).

Nor are we impressed with Blue Hill's argument that notice of the hearing should have been addressed to a Madeline Whiting rather than to the corporation because she had replied to the original notice of the charge with respect to Clegg under the designation "general manager."[12] We see no such requirement either in law or in reason. The commission was not required to assume that Whiting would remain as general manager of the corporation; it was not required to keep itself informed of the goings and comings of Blue Hill's personnel. (The notice of the hearing was sent about seven months after the date of the letter from Whiting.)

Blue Hill's argument that it did not receive notice and, therefore, the commission's order if enforced would deprive it of due process of law has no basis in fact or in law. The burden to show a constitutional deprivation is, of course, on

---

[12] The record is unclear as to how it was addressed.

Blue Hill. The portion of the "Stipulation of Facts" set out in the margin on which the contention is based[13] is hardly equivalent to proof that either she or some other appropriate officer did not receive actual notice.

Nor does it help Blue Hill if we were to assume that neither Whiting nor any other appropriate officer of the corporation received actual notice. The failure to receive actual notice does not amount to a constitutional deprivation if the method of notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . . 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'" *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950) (citation omitted). The method of notice used in this case was in compliance with the statute and "may be presumed reasonable." *Save the Bay, Inc.* v. *Department of Pub. Util.*, 366 Mass. 667, 677 (1975). As we have indicated above, we are not persuaded that the presumption has been rebutted.

Further, the fairness of the notice procedure used by the commission finds support in the provision of G. L. c. 150A, § 6(*f*), permitting "a petition for rehearing," 402 Code Mass. Regs. 2.03(13) (1978), providing for "motions made . . . subsequent to the hearing," and G. L. c. 150A, § 6(*e*), providing that either party in an enforcement proceeding may "apply to the court for leave to adduce additional evidence" before the commission. Compare Mass. R. Civ. P. 60(b), 365 Mass. 828-829 (1974); *Ellington* v. *Milne*, 14 F.R.D. 241 (E.D. N.C. 1953). Blue Hill, as we have indicated above, has not attempted to use any of these oppor-

---

[13] "If Madeline Whiting [,president and general manager,] were to testify she would testify that she did not see the Commission's Complaint and Notice of Hearing and was not personally aware that the Commission had scheduled a hearing for January 12, 1976, until after the decision and order of the Commission dated April 2, 1976."

tunities. We see no "fundamental unfairness." *B.F. Goodrich Co.* v. *Director of the Div. of Employment Security,* 6 Mass. App. Ct. 784, 801 (1979).

3. *Discriminatory discharges.* Clegg[14] and Russell were truck-drivers for Blue Hill; they distributed drinking water in five-gallon bottles to various businesses in the greater Boston area. Blue Hill employed about twenty persons, of whom about twelve were truck drivers who distributed the bottled water. About the middle of August, 1974, Clegg was assigned to make deliveries to the office of Teamsters Local 841 in Malden. There he became acquainted with the union personnel and undertook to unionize Blue Hill. In this he worked together with Russell; they were friends. They originally attempted to organize the entire plant but later, in September, limited themselves to the truck drivers. All but two or three of the drivers signed cards authorizing Teamsters Local 841 to represent them. All this was done on the Blue Hill premises, but secretly, since there were rumors that others had been fired previously for union activity. The signed authorization cards were sent to Local 841; and on October 31, 1974, Fitzgerald, as secretary-treasurer of Local 841, sent a mailgram to Blue Hill "Attn Mrs. M. Whiting," claiming that the local represented the majority of Blue Hill's employees and requesting a meeting. It was correctly addressed and carried the abbreviation, "DLR IMMY," which we take to mean, "deliver immediately."[15] The mailgram was sent at 1:04 P.M.

When Clegg returned from his route that day at about 5:15 P.M., Whiting was waiting for him with an envelope. She appeared angry. When Clegg greeted her she replied, "Here's your paycheck, you are fired." He asked her, "What's this for"; she answered, "You know what's this

---

[14] The narrative here set out is based primarily on Clegg's testimony at the hearing. He and Thomas Fitzgerald, secretary-treasurer of Local 841, were the only witnesses before the commission.

[15] Fitzgerald testified that in his experience in sending telegrams, they were received the same day.

for." He said, "Okay, Mrs. Whiting." She then said, "I hope I will never see you again." He replied, "You will . . . hear from me again . . . . You will be hearing from my union, Mrs. Whiting," and walked out. Outside he saw Russell, who told Clegg that he had also·been fired and showed him his paycheck. This occurred on a Thursday, though the work week ended on Friday.

Taken together, the circumstances point clearly to discriminatory discharges of the only two employees engaged in organizing the truck drivers since September.[16] That very day a telegram was sent by Local 841,[17] the particular union local with which Mrs. Whiting knew Clegg had contact as a driver. The precipitate discharges before the end of the work week[18] indicate a desire that they leave immediately and have no further contact with the employees. "The abruptness of a discharge and its timing are persuasive evidence as to its motivation . . . ." *NLRB* v. *Montgomery Ward & Co.*, 242 F.2d 497, 502 (2d Cir.), cert. denied, 355 U.S. 829 (1957). Whiting's refusal to give an explanation, which "may itself be a reason for inferring a discriminatory discharge," *A.J. Krajewski Mfg. Co.* v. *NLRB*, 413 F.2d 673, 676 n.2 (1st Cir. 1969),[19] leaves antiunion animus as the only plausible explanation. And as we have seen, Blue Hill has never sought an opportunity to explain the dis-

---

[16] *Gould, Inc.*, 216 N.L.R.B. 1031 (1975) ("Respondent chose to discharge four of the six employees in attendance at the union meeting"; § 8[a][3] violation found). Cf. *Teamsters Local 633* v. *NLRB*, 509 F.2d 490, 498 (D.C. Cir. 1974).

[17] *NLRB* v. *Rubin*, 424 F.2d 748, 750 (2d Cir. 1970) (Section 8[a][3] violation found from "stunningly obvious" timing of layoffs right after union request for recognition). *U.S. Soil Conditioning Co.*, 235 N.L.R.B. 762, 763, 764 (1978) (discharge came on the same day as the initial circulation of a union petition; § 8[a][3] violation found).

[18] See *Gould, Inc.*, 216 N.L.R.B. at 1031 (discharges on Monday despite employer's practice of discharging on Friday).

[19] *NLRB* v. *Plant City Steel Corp.*, 331 F.2d 511, 515 (5th Cir. 1964). Cf. *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 437-438 (1978); *NLRB* v. *Joseph Antell, Inc.*, 358 F.2d 880, 883 (1st Cir. 1966).

charges.[20]   The angry and abrupt discharge seems to indicate animus beyond displeasure with a poor performer.  *Joseph West*, 244 N.L.R.B. 828, 830-833 (1979).[21]   Whiting's hostility is further shown by her subsequent refusal to speak to union representatives when they called her on the telephone.

We need not attempt to separate knowledge from motive. *A.J. Krajewski Mfg. Co.* v. *NLRB*, 413 F.2d at 676. *NLRB* v. *Long Island Airport Limousine Serv. Corp.*, 468 F.2d 292, 295 (2d Cir. 1972).[22]   The totality of the circumstances in this case yields "such evidence as a reasonable mind might accept as adequate to support [the] conclusion" of discriminatory discharges.  G. L. c. 30A, § 1(6), defining "substantial evidence."  *St. Elizabeth's Hosp.* v. *Labor Relations Commn.*, 2 Mass. App. Ct. 782, 783 (1975).  We add that if it can be said that the evidence is slight (and we do not believe so), it is the fault of the defense, which has made no attempt to meet the factual issues.

4.  *Conclusion.*   The judgment below is vacated.   The case is remanded to the Superior Court to enforce the order of the commission.[23]

*So ordered.*

---

[20]Even in criminal cases failure of a party to call a witness whom that party might be expected to call creates an inference that the witness's testimony would be unfavorable to that party.   *Commonwealth* v. *Domanski*, 332 Mass. 66, 70-71 (1954).   We need not assess the strength we would give to such an inference, but in the circumstances it counts for something.

[21] The only claim of poor performance was as to Clegg in a letter to the commission when Blue Hill was notified of the original charges.   The commission mentioned this in its decision, but pointed out that it was not part of the record on which the order could be based (see G. L. c. 150A, § 6[*e*]) and that there was nothing to corroborate the charges.   They gave credence to Clegg's testimony to the contrary.

[22]Indeed, Whiting need not have been "morally certain" of Clegg's and Russell's union activity; it would be sufficient to have a "reasonable suspicion" and a willingness "to take action upon that suspicion."   *Teamsters Local 633* v. *NLRB*, 509 F.2d at 497.

[23] The commission's motion for attachment is pressed here by the interveners, although neither pressed by the commission nor ruled on below.   It was not adequately argued to this court and was not made part of the record appendix; it is not before us.